# United States Court of Appeals for the Federal Circuit

2008-7095


MARVIN ROBINSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.


Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant. On the brief was Mark R. Lippman, The Veterans Law Group, of La Jolla, California.

Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, and Jeanne E. Davidson, Director.

Richard R. James, of Glen Allen, Virginia, for amicus curiae National Organization of Veterans Advocates, Inc.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Lawrence B. Hagel

# United States Court of Appeals for the Federal Circuit

2008-7095

MARVIN ROBINSON,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 04-1690, Judge Lawrence B. Hagel.

_____

DECIDED:    February 25, 2009

_____

Before NEWMAN, PLAGER, and DYK, Circuit Judges.

DYK, Circuit Judge.

Marvin Robinson ("Robinson") appeals a decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming a decision by the Board of Veterans' Appeals ("Board"). The Board denied service connection on a claim for heart disease and a thyroid disability. We affirm.

## BACKGROUND

Robinson served on active duty in the United States Navy from October 16, 1986, to April 14, 1988. On May 27, 1987, Robinson was diagnosed with a peptic ulcer and treated at the Naval Hospital in San Diego, California. In November 1988,

Robinson was awarded service connection for the ulcer by the Department of Veterans Affairs ("VA") effective from the day following the date of his discharge from service.

Ten years later, in December 1998, Robinson submitted a claim to the VA for heart and thyroid conditions which allegedly began in February 1996. The VA Regional Office ("RO") in Montgomery, Alabama, denied Robinson's claim for the heart and thyroid conditions on September 14, 1999.

Robinson's newly retained attorney filed a notice of disagreement in November 1999, in which Robinson stated that he "disagree[s] with your office's decision . . . [denying Robinson's] claims for entitlement to service connection for heart disease and hyperthyroid condition as secondary to [Robinson's] service connected peptic ulcer disease." R. at 138-39.

The VA then sent Robinson a statement of the case and accompanying notice letter. The notice letter stated as follows:

> This summary will help you make the best argument to the [Board] . . . . To complete your appeal, you must file a formal appeal. We have enclosed VA Form 9 . . . . Your appeal should address . . . the errors that you believe we made in applying the law."

R. at 146. In one place, the statement of the case characterized the relevant issues as "[s]ervice connection for heart disease as secondary to the service-connected disability of peptic ulcer disease" and "[s]ervice connection for hyperthyroid condition as secondary to the service-connected disability of peptic ulcer disease. R. at 148. However, in the decision section, the statement of the case is broader: "[s]ervice connection for heart disease is denied" and "[s]ervice connection for hyperthyroid condition is denied." R. at 149.

Robinson perfected his appeal by filing a substantive appeal, VA Form 9, in January 2000. Robinson checked the box indicating that he "want[ed] to appeal all of the issues listed on the statement of the case and any supplemental statements of the case." R. at 152. Prompt 10 on the form, stating "Here is why I think the VA decided my case incorrectly," was left blank.

The VA filed a supplemental statement of the case in April 2001, including a discussion of additional evidence but stating the issues and decision in substantially the same manner. Robinson responded with a second substantive appeal, VA Form 9, in May 2001. On this appeal form, Robinson again checked that he wanted to appeal all of the issues, and wrote in response to prompt 10 that "I disagree with all of the conclusions in your office's Statement of the Case, dated April 18, 2001. The Regional Office failed to consider all the evidence and failed to follow the correct legal standards in reaching its conclusions." R. at 174.

In October 2001, the Board remanded to the RO for additional development of the record, including obtaining all treatment records and "arrang[ing] for a VA examination by an appropriate specialist in order to determine the nature, severity, and etiology of any thyroid disorder [and any cardiovascular disorder]." Appeal of Robinson, No. 00-02 500, slip. op. at 4-5, (Bd. Vet. App. Oct. 18, 2001). A VA examination occurred in late 2002, and the report of the examination stated that Robinson was first diagnosed with his thyroid disorder in 1998; that the thyroid disorder was not secondary to the ulcer; and that Robinson's chest pain was "noncardiac." R. at 697.

In May 2004, the Board denied Robinson's claim for service connection for the heart condition and the thyroid condition. The Board reviewed all the evidence and

concluded that "none of the records submitted tends to attribute cardiovascular disease to active service or to service-connected peptic ulcer disease." Appeal of Robinson, No. 00-02 500, slip. op. at 4-5, (Bd. Vet. App. May 17, 2004). After discussing the relevant legal standards for direct service connection, the Board characterized the veteran's arguments:

> In this case, however, the veteran contends that cardiovascular disease and/or a thyroid disorder were caused or aggravated by service-connected peptic ulcer disease, rather than due directly to any incident of active service. Therefore, the remainder of the analysis will focus solely on secondary service connection for those disorders.

Id. The Board then addressed the issue of secondary service connection and ultimately concluded that, "[a]fter consideration of all the evidence, the Board finds that the preponderance of it is against the claim." Id. at 9.

Robinson appealed to the Veterans Court. In his briefs before the Veterans Court, Robinson raised, inter alia, the contention that "[t]he record . . . before the Board revealed that the Appellant may be entitled to service connection on a direct basis. . . . [T]he Board's failure to address th[is] issue[] was in error." Appellant's Court. App. Vet. Cl. Reply Br. 2-3 (emphasis omitted).[1] In its decision of January 29, 2008, a divided panel of the Veterans Court affirmed. Robinson v. Mansfield, 21 Vet. App. 545 (2008).

The Veterans Court first considered whether it had jurisdiction over Robinson's claim for direct service connection when Robinson did not argue direct service connection before the Board. Id. at 550-51. The court held that it had jurisdiction

---

[1] The only other issues raised by Robinson before the Veterans Court were the alleged inadequacy of the medical examination and the alleged failure of the medical examination to comply with the prior remand order. The court affirmed the Board on these issues, and neither issue is contested by Robinson on appeal.

because direct service connection was not a different claim from secondary service connection; it was instead another argument under the same claim. Id.

The court then considered whether the Board erred in failing to adjudicate the issue of direct service connection. The court characterized the question as one of "issue exhaustion," and concluded that "[i]n this case, neither the appellant nor the record raised the theory of entitlement to service connection on a direct basis and, thus, the Board did not err in failing to discuss that theory." Id. at 553-54. In discussing whether the issue was raised by the claimant, the court relied in part on the participation of counsel in proceedings before the Board. The majority went on to hold that the issue of direct service connection was not raised by the record before the Board. Id. at 555-56.

The dissent disagreed with the majority's interpretation of the correct test to apply to determine whether the Board needs to address a theory of service connection, and urged that the Board is required to consider "all possible" theories under which the veteran could recover, even if there was nothing either stated by the claimant or in the record to raise the theory. Id. at 558-60 (Schoelen, J., dissenting). However, the dissent recognized that this duty "is not absolutely limitless—it is an inquiry into what is possible." Id. at 559. The dissent stated that this duty would not apply "for example, where the claimant is ineligible for the benefit . . . ; if the claim is inherently incredible or clearly lacks merit; or if the application requests a benefit to which the claimant is not entitled as a matter of law." Id. at 559 (citation omitted).

The dissent urged that it was irrelevant whether the veteran had raised the issue, reasoning that the Supreme Court's decision in Sims v. Apfel, 530 U.S. 103 (2000), prohibited the application of issue exhaustion to the nonadversarial Board process (except in the clear and unmistakable error context as in Andrews v. Nicholson, 421 F.3d 1278 (Fed. Cir. 2005)). Robinson, 21 Vet. App. at 561-62. The dissent also urged that it was wrong to impose additional requirements on represented appellants to raise issues in the nonadversarial Board process because it would create perverse incentives not to obtain representation. Id. at 564. The dissent would have remanded to require the Board to address the issue of direct service connection.

The Veterans Court denied en banc review on February 25, 2008, over a dissent by Judge Kasold. Robinson timely appealed to this court. We have jurisdiction over this appeal under 38 U.S.C. § 7292.

## DISCUSSION

### I

In various decisions we have made clear that the Board has a special obligation to read pro se filings liberally. See, e.g., Comer v. Peake, 552 F.3d 1362, 1368 (Fed. Cir. 2009); Andrews, 421 F.3d at 1282-84; Roberson v. Principi, 251 F.3d 1378, 1380-84 (Fed. Cir. 2001). This obligation applies both to proceedings appealing a decision of the RO to the Board ("direct appeals") and to proceedings alleging a clear and unmistakable error ("CUE") in a final decision of the Board. See Comer, 552 F.3d at 1367-68; Andrews, 421 F.3d at 1282-84. In Andrews, however, we held that this obligation does not extend to filings by counsel in CUE proceedings. 421 F.3d at 1283-84. This case presents the question whether the obligation to liberally read filings

applies to filings by counsel in the direct appeal phase of proceedings before the Board. We hold that the Board must read such filings liberally because this obligation is expressly imposed by the VA's own regulations.

A

In order to appeal a decision of the RO on a new or original claim to the Board, the claimant must follow the Board's Rules of Practice as delineated by regulation at 38 C.F.R. part 20.  As the regulations state, there are two filings that must be made to perfect an appeal of a decision of the RO:  a notice of disagreement, and a substantive appeal.  38 C.F.R. § 20.200.  "While special wording is not required," the notice of disagreement must be a written communication that "can be reasonably construed as disagreement with [the RO's decision] and a desire for appellate review."  38 C.F.R. § 20.201.  The regulations require that the claimant identify issues appealed in the notice of disagreement only if the RO "gave notice that adjudicative determinations were made on several issues at the same time."  Id.  As an example of what might constitute "several issues" in this context, the regulations identify the situation where "service connection was denied for two disabilities and the claimant wishes to appeal the denial of service connection with respect to only one of the disabilities."  Id.

After the VA responds to the notice of disagreement with a statement of the case, the claimant is then required to file a substantive appeal.  38 C.F.R. § 20.202.  The substantive appeal can be completed by filling out a simple one-page form, VA Form 9. Id.  The regulations describe in detail how the Board will read the substantive appeal:

> If the Statement of the Case . . . addressed several issues, the Substantive Appeal must either indicate that the appeal is being perfected as to all of those issues or must specifically identify the issues appealed.  The Substantive

> Appeal <u>should set out specific arguments relating to errors of fact or law</u> made by the [RO] in reaching the determination, or determinations, being appealed. To the extent feasible, the argument should be related to specific items in the Statement of the Case . . . . <u>The Board will construe such arguments in a liberal manner for purposes of determining whether they raise issues on appeal</u>, but the Board <u>may dismiss any appeal which fails to allege specific error of fact or law</u> in the determination, or determinations, being appealed. The Board will not presume that the appellant agrees with any statement of fact contained in a Statement of the Case . . . which is not specifically contested.

<u>Id.</u> (emphases added).

B

As we recently held in <u>Comer</u>, these regulations impose an obligation on the Board to read the appeal filings "in a liberal manner." 552 F.3d at 1368. While <u>Comer</u> was a pro se case, on its face the direct appeal regulations impose an obligation on the Board to read such filings by claimants "in a liberal manner," regardless of whether the claimant is represented by an attorney.

This interpretation is further supported by Congress's recent decision to expand the availability of paid representation in Board proceedings in direct appeals. <u>See</u> Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, § 101(c)(1)(A), 120 Stat. 3403, 3407 (codified at 38 U.S.C. § 5904(c)(1)). Indeed, it would defeat the congressional purpose of increasing the availability of much needed attorney assistance if direct appeal attorney filings were read in a less sympathetic light than pro se filings. As we stated in the context of veterans' service organizations in <u>Comer</u>, "[t]o hold that a veteran forfeits his right to have his claims read sympathetically if he seeks assistance . . . would be to discourage veterans from

seeking th[is] much-needed assistance" at this early stage of the proceedings. 552 F.3d at1370.

Our holding in this respect is not inconsistent with <u>Andrews,</u> 421 F.3d 1278. In <u>Andrews</u>, this court held that the rule that the Board was required to read pro se filings liberally did not extend to filings by counsel in the CUE context. <u>Id.</u> at 1283-84. There are three critical features of CUE claims that justify the different treatment of CUE filings.

First, CUE proceedings are fundamentally different from direct appeals. <u>See</u> 38 C.F.R. § 20.1402 ("Motions filed under this subpart [CUE claims] are not appeals and, except as otherwise provided, are not subject to the provisions . . . which relate to the processing and disposition of appeals."); <u>Disabled Am. Veterans v. Gober</u>, 234 F.3d 682, 694-95 (Fed. Cir. 2000) (upholding the validity of § 20.1402 and discussing the purpose of the provision). CUE proceedings are a limited exception to the rule of finality that permits collateral attack on a Board decision only where "a very specific and rare kind of error [is made] that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." 38 C.F.R. § 20.1403; <u>see</u> <u>Cook v. Principi</u>, 318 F.3d 1334, 1344 (Fed. Cir. 2002) (en banc) (holding that a breach of the duty to assist cannot constitute CUE).

Second, unlike direct appeals, regulations governing CUE claims make no mention of any obligation to construe the filings liberally, and instead place the onus of specifically raising each issue on the claimant:

> The motion <u>must set forth clearly and specifically the alleged clear and unmistakable error</u>, or errors, of fact or law in the

Board decision, the legal or factual basis for such allegations, and why the result would have been manifestly different but for the alleged error. Non-specific allegations of failure to follow regulations or failure to give due process, or any other general, non-specific allegations of error, are insufficient to satisfy the requirement of the previous sentence. Motions which fail to comply with the requirements set forth in this paragraph shall be dismissed without prejudice to refiling under this subpart.

38 CFR § 20.1404(b) (emphases added); see Disabled Am. Veterans, 234 F.3d at 698-99 (finding the specificity requirement reasonable, though invalidating a prior version of the regulation for other reasons). As the emphasized language demonstrates, the regulations limit the proceedings to the very specific issues raised by the filings.

Third, as discussed in Andrews, each new CUE theory is independent for res judicata purposes, so a narrow reading of what CUE theories were raised would work no disadvantage to the claimant, as any unraised theories could be raised in a new CUE action. See 38 C.F.R. § 20.1409(c) ("Once there is a final decision on a motion under this subpart relating to a prior Board decision on an issue, that prior Board decision on that issue is no longer subject to revision on the grounds of clear and unmistakable error." (emphasis added)); Andrews, 421 F.3d at 1284; Andre v. Principi, 301 F.3d 1354, 1361 (Fed. Cir. 2002) ("Because a CUE claim involves an allegation of an error with some degree of specificity, a veteran's assertion of a particular clear and unmistakable error by the RO constitutes a distinct claim." (quotation marks omitted)). On appeals to the Board, by contrast, theories of substantive entitlement to benefits such as direct and secondary service connection are not independent for res judicata purposes, and can be lost forever if not addressed. See Bingham v. Nicholson, 421 F.3d 1346, 1348-49 (Fed. Cir. 2005).

2008-7095                                          10

For these reasons, it is appropriate to differentiate between CUE proceedings and direct appeals. In direct appeals, all filings must be read "in a liberal manner" whether or not the veteran is represented. 38 C.F.R. § 20.202.

An allegation that the Board failed to comply with its obligation to read filings liberally may, of course, be raised for the first time on appeal to the Veterans Court.

II

We turn finally to the scope of the Board's obligation to read the filings of the claimant "in a liberal manner."

We recently addressed this question in Comer. In Comer, the claimant did not specifically raise retroactive entitlement to total disability based on individual unemployability ("TDIU") benefits. However, the court held that the Board was obligated to consider retroactive TDIU benefits because the claimant filed an appeal raising related issues and the record before the Board included "persuasive evidence of his unemployability; he has not been employed on a full-time basis since 1975 and the Veterans Court did not dispute that there was extensive record evidence of Comer's employment difficulties." 552 F.3d at 1367 (quotation marks omitted).

The government in Comer argued that the claimant "does not seek a sympathetic reading of a claim or pleading but, instead, seeks the board's review of an issue that was not raised on appeal." Id. We rejected that argument and clarified that the obligation to read filings in a liberal manner included the question of what issues were raised. Id. at 1367-68.

Thus, where the claimant has raised an issue of service connection, the evidence in the record must be reviewed to determine the scope of that claim. As we stated in

Comer, "the VA is obligated to determine all potential claims raised by the evidence." Id. at 1367 (quoting Roberson, 251 F.3d at 1384). However, claims which have no support in the record need not be considered by the Board. Contrary to the dissenting opinion in the Veterans Court, the Board is not obligated to consider "all possible" substantive theories of recovery. Robinson, 21 Vet. App. at 559. Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory.

We also do not suggest that under the regulations the veteran is entirely relieved of his or her obligation to raise issues in the first instance before the VA where the record is being made. The regulations quite clearly impose such an obligation even in direct appeals, stating that "the Substantive Appeal must either indicate that the appeal is being perfected as to all . . . issues or must specifically identify the issues appealed. . . . [T]he Board may dismiss any appeal which fails to allege specific error of fact or law in the determination, or determinations, being appealed." 38 C.F.R. § 20.202. We hold only that the veteran's efforts to raise issues on direct appeal should be liberally construed whether or not the veteran is represented by counsel. In this context, having raised the basic issue of service connection—here that the veteran suffered thyroid and heart conditions that were somehow related to service—the Board was obligated to consider direct as well as secondary service connection if raised by the record.[2]

---

[2]  Indeed, as the government contends, it may well be that the Veterans Court was incorrect in suggesting that the Board did not address the direct service connection issue; it appears from the Board opinion that it in fact did so. The Board reviewed Robinson's service medical records and found that "[t]he veteran's service medical records . . . do not reflect any complaint or finding of a thyroid disorder or heart

III

In this case, the court found as a factual matter that the record did not raise any issue of direct service connection. <u>Robinson</u>, 21 Vet. App. at 555-56. Although the dissenting opinion in the Veterans Court points to facts that the dissent urges require a different result, the factual determinations of the court are beyond our jurisdiction to review. <u>Szemraj v. Principi</u>, 357 F.3d 1370, 1374-75 (Fed. Cir. 2004). As a result, we must affirm the judgment of the Court of Appeals for Veterans Claims.

AFFIRMED

COSTS

No costs.

---

disease [during service]. . . . The first evidence of a thyroid disorder or heart disease is many years after service." Appeal of Robinson, No. 00-02500, slip. op. at 5, (Bd. Vet. App. May 17, 2004). In reviewing records from the Social Security Administration ("SSA"), the Board found that "[n]one of the SSA records tend to link any thyroid or cardiovascular disorder to active service or to service-connected disability nor does any SSA record tend to show any cardiovascular renal disease within a year of separation from active service." <u>Id.</u> at 6.