Citation Nr: 1302158 
Decision Date: 01/18/13 Archive Date: 01/23/13

DOCKET NO. 08-26 290 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to compensation under 38 U.S.C.A. § 1151 for additional disability manifested by hepatitis C as a result of treatment received at the VA Medical Center (VAMC) in Houston, Texas, in November 1980, for accrued benefits purposes.

2. Entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death.

3. Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Missouri Veterans Commission


ATTORNEY FOR THE BOARD

Michael Wilson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1953 to May 1955. He died in June 2006. The appellant is the Veteran's surviving spouse.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a September 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri, which, in relevant part, denied the benefits sought on appeal.

In a June 2010 decision, the Board denied the appellant's claim of entitlement to service connection for residuals, coronary artery disease (CAD), status post coronary artery bypass grafting (CABG), for accrued benefits purposes. The Board additionally remanded the appellant's claim for service connection for the cause of the Veteran's death for further development. In June 2011, the Board again remanded the appellant's claim for service connection for the cause of the Veteran's death for still further development. 

In both the June 2010 and June 2011 decisions, the Board determined that by noting in her August 2008 substantive appeal (on VA Form 9) that she was appealing "Issues: 1/3 Only," the appellant indicated her desire to withdraw the second issue listed on the August 2008 statement of the case (SOC), that of entitlement to compensation under 38 U.S.C.A. § 1151 for hepatitis C, for accrued benefits purposes, in spite of her checking box A. in section 9., indicating that she wanted to appeal all of the issues listed on the SOC. In reaching this determination, the Board attempted to distinguish the appellant's case from that of Evans v. Shinseki, 25 Vet. App. 7 (2011). However, in reviewing this noted ambiguity in retrospect, the Board finds that the holding of the United States Court of Appeals for Veterans Claims (Court) in Evans would specifically require that the Board at least attempt to clarify the appellant's intentions. Id. at 14. In this case, however, the appellant provided a statement received in July 2010 indicating that she still desired to pursue the claim for entitlement to compensation under 38 U.S.C.A. § 1151 for hepatitis C, for accrued benefits purposes. Accordingly, the Board finds that no further clarification is needed from the appellant, and thus the issue has been included as an issue currently on appeal before the Board, as indicated on the title page.

The issue of entitlement to service connection for tinnitus, for accrued benefits purposes, was previously referred to the agency of jurisdiction (AOJ) in the Board's June 2010 and June 2011 decision. It appears, however, that this claim still has not been adjudicated by the AOJ. Therefore, it is again referred to the AOJ for appropriate action. 

For the reasons addressed in the REMAND portion of the decision below, the claim of entitlement to service connection for the cause of the Veteran's death is again remanded to the RO via the Appeals Management Center (AMC), in Washington, DC. The Board is also concurrently remanding an inferred claim of entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death due to VA medical treatment, as described below. VA will notify the appellant if further action is required on her part.



FINDINGS OF FACT

1. The Veteran died in June 2006; the appellant filed a claim for accrued benefits in September 2006, within one year of the Veteran's date of death. 

2. At the time of the Veteran's death, a claim was pending for entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for hepatitis C as a result of treatment received at the Houston VAMC in November 1980. 

3. It is at least as likely as not that the Veteran contracted hepatitis C as a result of a blood transfusion received during surgical treatment performed at the Houston VAMC in November 1980.

4. The contraction of hepatitis C was an event that was not reasonably foreseeable.


CONCLUSION OF LAW

The criteria for compensation under the provisions of 38 U.S.C.A. § 1151 for additional disability manifested by hepatitis C contracted as a result of VA medical treatment rendered in November 1980 have been met, for accrued benefits purposes. 38 U.S.C.A. §§ 1151, 5121, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.361, 3.1000 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The appellant seeks entitlement to compensation under 38 U.S.C.A. § 1151 for hepatitis C, which she claims the Veteran incurred during a blood transfusion while undergoing a triple vessel bypass grafting surgery at the Houston VAMC in November 1980. 

Accrued benefits are periodic monetary benefits to which a Veteran was entitled at the time of his death under existing ratings or decisions, or those based on evidence in the file on the date of death, and which are due and unpaid will, upon the death of such Veteran, be paid to the surviving spouse. Application for accrued benefits must be filed within one year after the date of death. A pending claim on the date of death means a claim filed with VA that had not been finally adjudicated by VA on or before the date of death. 38 U.S.C.A. § 5121(a) (West 2002 & Supp. 2012); 38 C.F.R. § 3.1000 (2012).

The appellant's accrued benefits claim for compensation under 38 U.S.C.A. § 1151 is derivative of the Veteran's claim which was filed during his lifetime, and pending when he died. In February 2006, the Veteran submitted a claim for benefits under 38 U.S.C.A. § 1151 for incurrence of hepatitis C during a blood transfusion received at the Houston VAMC in November 1980. The Veteran died in June 2006. The appellant filed a claim for dependency and indemnity compensation (DIC), including any accrued benefits, in September 2006.

As the basic elements for establishing an accrued benefits claim are met, the question before the Board is whether VA disability compensation for hepatitis C under 38 U.S.C.A. § 1151 is warranted.

VA disability compensation under 38 U.S.C.A. § 1151 is awarded for a qualifying additional disability of a Veteran in the same manner as if such additional disability were service connected. A disability is a qualifying additional disability if the disability was caused by VA medical treatment, and the proximate cause of the disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the medical treatment; or the additional disability was not reasonably foreseeable. 38 U.S.C.A. § 1151 (West 2002).

Under 38 C.F.R. § 3.361(c), a claim based on death due to medical treatment must meet the causation requirements. To establish causation, the evidence must show that VA's medical treatment resulted in death. Merely showing that a veteran received treatment and that the veteran has an additional disability does not establish cause. 38 C.F.R. § 3.361(c)(1) (2012). The proximate cause of disability is the action or event that directly caused the disability, as distinguished from a remote contributing cause.

Under 38 C.F.R. § 3.361(d)(1), to establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing medical treatment, it must be shown that the treatment caused the veteran's death and VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent.

Under 38 C.F.R. § 3.361(d)(2), whether the proximate cause of a veteran's additional disability or death was an event not reasonably foreseeable is to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d)(2).

In the instant case, the evidence of record shows that the Veteran was transferred to the Houston VAMC in November 1980 with documented atherosclerotic occlusive disease of multiple arteries. He underwent a procedure described as bypass graft from the ascending aorta to the left anterior descending, obtuse marginal, and right coronary artery with endarterectomy of the right coronary artery. The procedure reportedly went without complications.

The Veteran contended, however, that he received blood as a result of a blood transfusion during the course of his triple vessel bypass grafting surgery and that he became infected with hepatitis C as a result of that blood transfusion. 

Although the evidence of record does not clearly indicate that the Veteran received a blood transfusion during his open heart surgery, the Veteran consistently reported having received blood product and being told that he incurred his hepatitis C as a result of the blood transfusion he received during his open heart surgery in November 1980. The appellant similarly contends that she was present prior and after the surgery and witnessed firsthand that the Veteran received blood product.

A review of the Veteran's VA treatment records reveals that he repeatedly reported having incurred hepatitis C as a result of this blood transfusion. This is seen in VA treatment reports dated in April 1995, June 2002, March 2003, November 2005, and June 2006. Given the era and the type of surgery the Veteran underwent, and the seemingly credible lay evidence of record, the Board finds that the Veteran received blood product during his November 1980 triple vessel bypass grafting surgery. 

Accordingly, the Board is left to consider the likelihood that the Veteran incurred hepatitis C as a result of such blood transfusion, and if so, whether the alleged hepatitis C infection was as a result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the medical treatment; or whether the additional disability was not reasonably foreseeable. 

As noted, the Veteran repeatedly reported incurring hepatitis C as a result of the blood transfusion received during his November 1980 open heart surgery. Specifically, the Veteran and the appellant have contended in multiple statements that the Veteran was told in 1981 that he had incurred hepatitis C as a result of his November 1980 blood transfusion. In an April 1995 VA clinical record, he was noted to have a questionable history of hepatitis C due to a blood transfusion. The first evidence of record of a medical diagnosis of hepatitis C is found in an August 2000 VA primary care report. Notably, hepatitis C was first identified as a disease entity in 1988 and the first blood test for the specific hepatitis C virus became available in 1990. See VBA Fast Letter 99-41 (May 3, 1999). Thus while the Veteran may have been correct in reporting that he was told he had a form of hepatitis, he was very likely not informed of a specific diagnosis of hepatitis C until sometime after 1990.

As to the determinative issue of whether the Veteran likely incurred hepatitis C as a result of the November 1980 blood transfusion, the Board requested an opinion from an independent medical expert (IME) in August 2012. See 38 U.S.C.A. § 7109 (West 2002); 38 C.F.R. § 20.901 (2012) (the Board may obtain an advisory medical opinion from one or more medical experts who are not VA employees when, in the judgment of the board, additional medical opinion is warranted by the medical complexity or controversy involved in an appeal). 

In October 2012, the requested IME opinion was received. After a review of the lay and medical evidence of record, the IME provided an opinion indicating that it was more likely than not that the Veteran acquired hepatitis C via the blood transfusion received during his November 1980 coronary artery bypass surgery. The IME noted that in the year 2000, primary care physicians, surgeons, and other medical specialists began receiving notification form hospital blood banks that a patient they had previously treated may have been exposed to hepatitis C virus as a result of blood transfusion. As the IME noted, the evidence of record of a diagnosis of hepatitis C infection made in the year 2000 would thus correspond with that timeline. 

Based on the IME's thorough medical opinion and the abundant and seemingly credible lay evidence of record, the Board finds that the Veteran at least as likely as not incurred hepatitis C as a result of the blood transfusion received ruing his November 1980 coronary artery bypass surgery. This is particularly so when resolving reasonable doubt in the appellant's favor. See 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2012).

The evidence does not suggest there was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in performing the November 1980 surgery. However, given that hepatitis C was not noted to be a separate disease entity until 1988, the Board finds that a reasonable health care provider would not have considered it to be an ordinary risk with respect to the treatment provided (i.e., blood transfusion). Therefore, resolving reasonable doubt in favor of the appellant, the Board finds that the Veteran's incurrence of hepatitis C was an event not reasonably foreseeable as a result of his November 1980 coronary artery bypass surgery. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Accordingly, the Board concludes that compensation benefits under the provisions of 38 U.S.C.A. § 1151 for hepatitis C is warranted, for accrued benefits purposes. 



ORDER

Compensation under the provisions of 38 U.S.C.A. § 1151 for additional disability manifested by hepatitis C, due to medical treatment by VA in November 1980, for accrued benefits purposes, is granted. 


REMAND

The appellant's remaining claims on appeal are those of entitlement to service connection for the cause of the Veteran's death and the intertwined issue of entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death. A remand is required with respect to these issues as it is necessary to ensure that there is a complete record upon which to decide these claims so that the appellant is afforded every possible consideration.

At the outset, the Board notes that courts have held that proceedings before VA are nonadversarial and VA's obligation to analyze claims goes beyond the arguments explicitly made. See Robinson v. Peake, 21 Vet. App. 545, 553 (2008), aff'd sub nom. Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009); see also Schroeder v. West, 212 F.3d 1265, 1271 (Fed. Cir. 2000) (upon the filing of a claim for benefits, VA generally must investigate the reasonably apparent and potential causes of the Veteran's condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filing). 

Pursuant to this concept, the Board finds that as a result of the October 2012 IME opinion, a claim of entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death has been raised by the record. This claim has not, however, been adjudicated by the AOJ in the first instance. See, e.g., Bernard v. Brown, 4 Vet. App. 384 (1993). The Board further observes that this claim is inextricably intertwined with the appellant's claim for service for the cause of the Veteran's death on appeal. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both issues have been considered.). Claims of this sort should be considered concurrently, to avoid piecemeal adjudication of claims having common parameters. See Ephraim v. Brown, 82 F.3d 399 (Fed. Cir. 1996); Hoyer v. Derwinski, 1 Vet. App. 208 (1991); Holland v. Brown, 6 Vet. App. 443, 446 (1994). As such, rather than referring the claim to the AOJ, the Board is remanding this claim together with the appellant's claim for service connection for the Veteran's cause of death.

With respect to the appellant's claim of service connection for the cause of the Veteran's death specifically, the Board notes that a VA medical opinion was obtained in August 2010 with respect this claim. In that opinion, the VA examiner opined that the Veteran's death was less likely as not caused by or aggravated by his service. In reaching this opinion, the examiner noted that while the Veteran was hospitalized during his active service, his noted diagnosis was pleurisy. The examiner noted that a myocardial infarction is one of the causes for pleurisy, called post myocardial syndrome or Dressler's syndrome. The examiner further noted, however, that there was no electrocardiogram (EKG) report associated with his in-service treatment records. Nonetheless, the examiner noted that the treatment report from the Veteran's coronary artery bypass graft surgery did not reveal any myocardial damage or abnormal wall motion to suggest a previous myocardial infarction. Additionally, while treatment records from a later hospitalization in May 1981 indicated that he had anterior myocardial infarction damage after his coronary artery bypass grafting, there is no evidence to suggest a prior myocardial infarction in 1953. 

After a review of the evidence of record, the Board observes that the appellant has indicated that she was present at the time of his coronary artery bypass surgery in 1980, and at that time a treating physician specifically asked the Veteran when he had had his prior heart attack. The Veteran indicated that he did not know that he had had a heart attack, and reported the incident where he suffered from chest pain during his service in 1953. Unfortunately, in providing his opinion, the VA examiner did not comment on the lay of evidence of record indicating that the Veteran had a heart attack prior to his November 1980 surgery. Moreover, the examiner did not specifically provide an opinion as to whether it was at least as likely as not that the Veteran's heart condition, whether or not related to service, substantially contributed to his death. As such, this opinion is inadequate for rating purposes. See 38 C.F.R. § 4.2 (2012) (stating that if the findings on an examination report do not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes).

Accordingly, after any additional evidence is obtained, a new medical opinion should be obtained with respect to whether the Veteran had a heart condition during his active service which would have later contributed substantially or materially to his cause of death. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (once VA undertakes an examination, even if not required to do so, an adequate one must be produced).

Additionally, in the prior June 2011 remand of this claim, the Board specifically directed the AOJ to attempt to obtain records from the Veteran's noted in-service hospitalization at the U.S. Army Hospital at Camp Chaffee, Arkansas. While another copy of some of the Veteran's service treatment records were obtained and associated with the claims file, it appears that no attempt was made to obtain the records directly from the identified hospital. Therefore, on remand all reasonable attempts should be made to obtain these records.

Accordingly, these issues are REMANDED for the following actions:

1. Notify the appellant about (1) the information and evidence not of record that is necessary to substantiate a claim for entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death; (2) the information and evidence that VA will seek to obtain on her behalf; and (3) the information or evidence that she is expected to provide. A copy of this notification must be associated with the claims file.

2. After obtaining any necessary release forms, obtain a complete copy of the Veteran's treatment records from the U.S. Army Hospital located at Camp Chaffee, Arkansas dated from July to August 1953. All reasonable attempts should be made to obtain such records. If any requested records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The appellant must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) (West 2002) and 38 C.F.R. § 3.159(e) (2012).

3. Thereafter, obtain a medical opinion pertaining to the Veteran's cause of death from an appropriate VA examiner. The claims file and a complete copy of this remand must be made available to and reviewed by the examiner in conjunction with the examination. 

The VA examiner is asked to review all evidence of record and to provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran suffered from a heart condition during his active service. In providing this opinion, the examiner should specifically address all evidence of record, including lay assertions from the Veteran or appellant indicating that he suffered from a heart condition while hospitalized from July to August 1953 during his active service. 

If the Veteran at least as likely as not suffered from a heart condition during his service, the VA examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's heart condition led to his later coronary artery bypass surgery in November 1980 and subsequent heart treatment thereafter. 

The VA examiner should finally provide an opinion as to whether the Veteran's heart condition, for which he received post-service treatment (whether or not at least as likely as not etiologically related to service), caused or contributed to cause his death or caused or aggravated the conditions that led to his death (i.e., respiratory failure, lung cancer, liver cancer) In providing this opinion, the VA examiner should specifically address the October 2012 IME opinion that the Veteran's liver cancer caused or substantially contributed to his cause of death.

The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions. 

4. Thereafter, review the claims file to ensure that the foregoing requested development has been completed. In particular, review the VA examination report to ensure that it is responsive to and in compliance with the directives of this remand and if not, implement corrective procedures. See Stegall v. West, 11 Vet. App. 268 (1998).

5. Finally, readjudicate the appellant's remaining claims on appeal, including the issue of entitlement to compensation under 38 U.S.C.A. § 1151 for the cause of the Veteran's death. If either claim remains denied, provide the appellant and her representative with a supplemental statement of the case, and after they have had an adequate opportunity to respond, return this appeal to the Board for further appellate review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



______________________________________________
RYAN T. KESSEL
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs