NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHIRLEY GAY,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1226

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-2089, Senior Judge Robert N. Davis, Judge Joseph L. Falvey, Jr., Judge William S. Greenberg.

---

Decided:  October 25, 2021

---

ROBERT C. BROWN, JR., Tommy Klepper & Associates, PLLC, Norman, OK, argued for claimant-appellant.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ELIZABETH MARIE HOSFORD; JULIE HONAN, Y. KEN LEE,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before TARANTO, CLEVENGER, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

After completing two periods of service in the Navy, Alvin G. Gay sought benefits from the Department of Veterans Affairs (VA) for an ear condition and hearing loss.  Mr. Gay pursued his claim until his death in 2011, at which point his surviving spouse, Shirley Gay, was substituted as claimant.  The relevant VA regional office (RO) most recently denied the requested benefits in 2018, and the Board of Veterans' Appeals affirmed that denial in 2019.  When Mrs. Gay appealed the Board's decision to the Court of Appeals for Veterans Claims (Veterans Court), that court affirmed the Board's denial in a single-judge disposition.  *Gay v. Wilkie*, No. 19-2089, 2020 WL 3088864 (Vet. App. June 11, 2020).  Mrs. Gay moved for reconsideration or, in the alternative, for a three-judge panel decision, contending that a recent Supreme Court decision not involving veterans benefits, *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020) (*Regents*), required reassessment of a legal principle applied by the Veterans Court in its single-judge disposition.  The Veterans Court denied reconsideration but made the single-judge decision a three-judge panel decision of the court.

Mrs. Gay now appeals to us.  Our jurisdiction is limited to the legal question presented and does not extend to any fact issue in this matter.  *See* 38 U.S.C. § 7292.  We affirm.

I

Mr. Gay first joined the Navy during World War II, in March 1945.  During this first period of service, Mr. Gay was diagnosed with acute "catarrhal fever"—a then-used term for a group of respiratory tract diseases that includes

the common cold, influenza, and lobular and lobar pneumonia—and deemed to have "[u]sual symptoms" and to require "[r]outine treatment." J.A. 27; J.A. 51; *Gay*, 2020 WL 3088864, at *3 n.38 (quoting STEDMAN'S MED. DICTIONARY 659 (27th ed. 2000)). Mr. Gay was honorably discharged in August 1946, and, after his discharge, he was treated for a right ear condition in 1949, potentially due to a fungal infection and/or scarlet fever. J.A. 53–54; J.A. 56–57 (also stating that Mr. Gay reported that his "[r]ight ear has been draining off and on all his life").

Mr. Gay rejoined the Navy in November 1950 and served during the Korean War. At the time he sought to reenlist, Mr. Gay underwent a reentry examination that revealed a small perforation in the right tympanic membrane, as well as evidence of chronic otitis media, but the Navy granted him a waiver that allowed him to engage in active service. J.A. 23–25; J.A. 55. During this second period of service, Mr. Gay was treated for otitis in both ears. J.A. 58. He was honorably discharged in June 1952.

A few months later, in October 1952, Mr. Gay filed his first claim based on an allegedly service-connected right ear condition, which he stated began in 1949 and was aggravated during his 1950–52 service. J.A. 59–67. The relevant RO denied the claim. It found that, although Mr. Gay may have experienced an acute flare-up of his pre-1950 ear condition during his 1950–52 service, there was no aggravation of the condition noted at his 1952 discharge. J.A. 68–70; J.A. 70 ("It is not considered that veteran's disability of otitis media was incurred in or aggravated by service and service connection is not considered warranted.").

In the ensuing decades, Mr. Gay's ear troubles continued. In 1965, he had a mastoidectomy to remove a cholesteatoma in his right ear. J.A. 259; J.A. 279. By 1989, he was diagnosed with moderate-to-severe sensorineural hearing loss in his right ear and moderate high-frequency

sensorineural hearing loss in his left ear.  J.A. 237; J.A. 294; *see also* J.A. 93–96.

In 1996, Mr. Gay asked VA to reopen his claim for disability compensation, stating that his disability was caused by right ear fungus beginning in 1945, but VA declined to reopen.  J.A. 71–74; J.A. 76–77.  VA denied two similar requests the next year.  J.A. 78–81.  In 2008, Mr. Gay filed a new claim for bilateral hearing loss, chronic otitis media, and tinnitus, citing exposure to loud noise as a service-related cause, which the RO again denied.  J.A. 82–88.  Mr. Gay filed several requests for reconsideration, as well as a notice of disagreement, before passing away on June 19, 2011.  J.A. 92–115.

In 2012, VA formally substituted Mr. Gay's widow, Shirley Gay, as the claimant.  J.A. 189–92.  Mrs. Gay continued to pursue the claim, and in 2013 she and two daughters testified before the Board to the effect that an unknown VA physician informed the family in 2009 or 2010 that Mr. Gay contracted a South Seas fungus in his right ear during his first period of service.  J.A. 198–219.  The Board then obtained an additional medical opinion, but based on that opinion, the Board denied Mrs. Gay's claims. J.A. 220–27; J.A. 229–45.[1]

Mrs. Gay appealed.  In August 2016, the Veterans Court, identifying multiple errors related to the Board's treatment of the South Seas fungus testimony, remanded back to the Board.  *Gay v. McDonald*, No. 15-0638, 2016 WL 4438111, at *1–2 (Vet. App. Aug. 23, 2016).  In July 2017, the Board in turn remanded to the RO, J.A. 251–58, requiring the RO to obtain a new medical opinion addressing, among other things, the question: "if [Mr. Gay's] right

---

[1]    By that point, Mrs. Gay had withdrawn the claim for disability benefits for service-connected tinnitus.  J.A. 233.

ear hearing loss was due to chronic right otitis media, was [his] right otitis due to an infection contracted during the first period of service [1945–46]?" J.A. 257. The RO obtained the required medical opinion but again denied the claim, determining that Mr. Gay's chronic right otitis media and hearing loss were likely caused by a preexisting cholesteatoma (rather than the reverse) and that the cholesteatoma was not aggravated during service. J.A. 271–273; J.A. 278–80. The Board affirmed. J.A. 291–300.

Mrs. Gay appealed to the Veterans Court, arguing that (1) the Board had not complied with the August 2016 Veterans Court and the July 2017 Board remand orders and (2) the Board's decision was arbitrary and capricious for failing to address whether Mr. Gay's documented case of catarrhal fever during his 1945–46 service could have contributed to his ear condition. *Gay*, 2020 WL 3088864, at *1, *3. The Veterans Court, in a single-judge disposition, rejected both arguments. First, the Veterans Court determined that the Board had substantially complied with the remand orders. *Id.* at *1–3. Second, and what is now at issue in the present appeal, the Veterans Court determined that the Board was not required to address whether catarrhal fever caused Mr. Gay's ear condition. *Id.* at *3–4.

In determining that the Board was not required to investigate the catarrhal-fever-causation issue, which Mrs. Gay had not raised to the Board, the Veterans Court relied on *Robinson v. Peake*, 21 Vet. App. 545 (2008) (*Robinson I*), and this court's affirmance of that decision in *Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009) (*Robinson II*). In *Robinson I*, a veteran receiving disability compensation for a peptic ulcer sought benefits for heart disease and a hyperthyroid condition as allegedly secondary to the ulcer. 21 Vet. App. at 548. When the Board denied the claims, Robinson appealed to the Veterans Court, arguing that the Board also had an obligation to consider whether his heart disease and hyperthyroid conditions were *directly* connected to his service (*i.e.*, not just eligible as secondary

claims to his peptic ulcer). *Id.* The Veterans Court determined that the Board was not required to address this argument, reasoning that (a) "the Board is required to consider all issues raised either by the claimant . . . or by the evidence of record" but (b) the Board is not required "to assume the impossible task of inventing and rejecting every conceivable argument." *Id.* at 552–53 (citations omitted). We affirmed, stating that (a) "the VA is obligated to determine all potential claims raised by the evidence" where the claimant has asserted service connection of an allegedly disabling condition but (b) "[w]here a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory." *Robinson II*, 557 F.3d at 1361 (citations omitted); *see also id.* ("[C]laims which have no support in the record need not be considered by the Board."). The determination of whether the record raises an issue, we added, is a determination of "a factual matter" that is "beyond our jurisdiction to review." *Id.* at 1362.

In this case, the Veterans Court, applying the *Robinson* standard,[2] determined that "[w]hile the evidence suggests that Mr. Gay suffered from catarrhal fever . . . [n]either Mrs. Gay's arguments, nor the record, demonstrated a relationship between Mr. Gay's fever and his ear condition." *Gay*, 2020 WL 3088864, at *4. On that basis, the Veterans Court held that "the Board did not err in failing to investigate this theory that was not appropriately raised." *Id.*

Mrs. Gay moved for reconsideration or, in the alternative, for a three-judge panel decision, contending that the Supreme Court's decision in *Regents*—handed down a week after the single-judge Veterans Court disposition—

---

[2]   Mrs. Gay has not identified a material substantive difference between the formulations set forth in *Robinson I* and *Robinson II*, so we refer to the *Robinson* "standard."

justified reconsideration of whether the Board was required to consider the catarrhal-fever issue. Motion for Reconsideration, or in the Alternative, for a Panel Decision, *Gay v. Wilkie*, No. 19-2089 (Vet. App. June 21, 2020). The Veterans Court denied the motion for single-judge reconsideration and granted the motion for a panel decision but ordered that the single-judge decision remain the decision of the court. J.A. 9–10. Accordingly, the Veterans Court entered judgment against Mrs. Gay on October 7, 2020. J.A. 1. Mrs. Gay timely appealed.

## II

### A

Mrs. Gay argues that the Veterans Court erred in adhering to the *Robinson* standard after the recent Supreme Court decision in *Regents*. Under 38 U.S.C. § 7292(a), this court has jurisdiction to address Mrs. Gay's contention that *Regents* requires a departure from the *Robinson* standard, a contention that presents a question of law. Moreover, en banc review is not needed for us to address that question: A panel may depart from a previous panel's decision if the departure is required by an intervening Supreme Court decision. *See Deckers Corp. v. United States*, 752 F.3d 949, 964 (Fed. Cir. 2014); *Doe v. United States*, 372 F.3d 1347, 1354–55 (Fed. Cir. 2004); *Tex. Am. Oil Corp. v. U.S. Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc). We decide the legal issue de novo. *Bazalo v. West*, 150 F.3d 1380, 1382 (Fed. Cir. 1998); *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

In *Regents*, the Supreme Court reviewed the Department of Homeland Security's (DHS) decision to end the Deferred Action for Childhood Arrivals immigration program (DACA)—which involved both a grant of certain work and other benefits to covered persons and a decision to forbear from instituting removal proceedings under the immigration laws. 140 S. Ct. at 1901. DHS made the termination decision based on a letter from the Attorney General

stating that the benefits portion of DACA was likely un-lawful. *Id.* at 1903. The Supreme Court, while rejecting several other challenges to the termination decision, held that DHS's decision was "arbitrary and capricious" in vio-lation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). *Id.* at 1913–15. The Court so ruled because DHS failed to consider "important aspect[s] of the prob-lem," namely: (1) DHS failed to recognize that DACA in-volved two distinct policies (benefits and forbearance), only one of which had been deemed unlawful, so DHS erred in not considering the feasibility of retaining one (forbear-ance) while terminating the other (benefits); and (2) DHS failed to address the reliance interests of DACA beneficiar-ies, interests that DHS had to consider in reversing the prior policy because it was not "writing on a blank slate." *Id.* at 1910–15 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Those holdings do not support a departure from the *Robinson* standard. First, the "important aspect of the problem" principle, taken by *Regents* directly from *State Farm*, is old and predates the *Robinson* cases. *See State Farm*, 463 U.S. at 43. Second, *Regents* applied the *State Farm* principle to a specific context quite different from the context (exemplified here) to which the *Robinson* standard applies. Whereas *Robinson* (like this case) involved a claim-specific adjudication, Regents involved a change of a prior general agency policy—and, specifically, a misunder-standing of the nature of the policy being changed and a failure to consider the reliance interests on that policy.[3]

---

[3]    *See State v. Biden*, 10 F.4th 538, 553–55 (5th Cir. 2021) (discussing *Regents* in policy-change context); *Medi-Natura, Inc. v. FDA*, 998 F.3d 931, 941–43 (D.C. Cir. 2021) (same); *Nat'l Urban League v. Ross*, 977 F.3d 770, 778 (9th Cir. 2020) (same).

Third, and in any event, nothing in *Regents* requires an agency adjudicating a claimant's assertion of entitlement to benefits to do more than *Robinson* requires, which is to address any theory of relief raised either by the claimant or by the evidence. *Regents* does not imply that the Board, if it fulfills that *Robinson* duty, has failed to address "important aspect[s] of the problem." *Regents*, 140 S. Ct. at 1910 (quoting *State Farm*, 463 U.S. at 43). Indeed, in its own context, *Regents* notes that the duty to consider issues has limits, stating that agencies are "not required . . . 'to consider all policy alternatives in reaching . . . decision[s].'" *Id.* at 1914–15 (quoting *State Farm*, 463 U.S. at 51).

For the foregoing reasons, we conclude that *Regents* does not require us to depart from the *Robinson* standard—even apart from the fact that judicial review here does not take place under the APA, which governed in *Regents*. We need not and do not rely on that fact here. *Regents* is an application of the APA's "arbitrary, capricious" standard of review, 5 U.S.C. § 706(2)(A), and this case is governed by 38 U.S.C. § 7261(a)(3)(A), which uses the same "arbitrary, capricious" language. Not surprisingly, we have used APA jurisprudence in applying the Title 38 provision. *See Euzebio v. McDonough*, 989 F.3d 1305, 1322–23 (Fed. Cir. 2021) ("The Veterans Court must also review Board and VA determinations for 'abuse of discretion' and 'arbitrary [and] capricious' decision making, including whether the Board or VA[] entirely failed to consider an important aspect of the problem . . . ." (quoting 38 U.S.C. § 7261(a)(3)(A) and *State Farm*, 463 U.S. at 43)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 432 n.2 (2011) ("[T]he Veterans Court's scope of review, § 7261, is similar to that of an Article III court reviewing agency action under the [APA] . . . ."). Whether an agency has failed to address an important aspect of a problem, and is arbitrary and capricious for that reason, can turn on the specific statutes and regulations that govern the agency, *see Oregon Natural Resources Council v. Thomas*, 92 F.3d 792, 798 (9th Cir.

1996), but that does not distinguish 38 U.S.C. § 7261 from 5 U.S.C. § 706. Regardless, we see no basis for concluding that *Regents* unsettles the *Robinson* standard. We therefore must reject Mrs. Gay's principal argument here.

## B

Mrs. Gay contends that (1) even under the *Robinson* standard, the record did in fact provide sufficient evidence to trigger the Board's duty to address the catarrhal-fever issue and (2) the August 2016 Veterans Court and the July 2017 Board remand orders were not substantially complied with. *See* Appellant's Br. 11–14. But those contentions challenge factual determinations or applications of law to fact that we do not have jurisdiction to review. 38 U.S.C. § 7292(d)(2); *see Robinson II*, 557 F.3d at 1362; *Prinkey v. Shinseki*, 735 F.3d 1375, 1383 (Fed. Cir. 2013); *Dyment v. Principi*, 287 F.3d 1377, 1381 (Fed. Cir. 2002); *Smith v. Shinseki*, 422 F. App'x 888, 890 (Fed. Cir. 2011). Mrs. Gay also contends that the Veterans Court's failure to address *Regents* when denying reconsideration was error, Appellant's Br. 10–11, but we read the Veterans Court's silence on the point as implicitly rejecting the contention that *Regents* requires a departure from the *Robinson* standard. As we have explained above, we agree with that rejection.

## III

For the foregoing reasons, we affirm the decision of the Veterans Court.

The parties shall bear their own costs.

**AFFIRMED**