NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-7024


GERALD A. LECHLITER,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.


Gerald A. Lechliter, of Lewes, Delaware, pro se.

Lauren S. Moore, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were Jeffrey S. Bucholtz, Assistant Attorney General; Jeanne E. Davidson, Director; and Todd M. Hughes, Deputy Director.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Alan G. Lance, Sr.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-7024

GERALD A. LECHLITER,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 04-1568, Judge Alan G. Lance, Sr.

_____

DECIDED: June 20, 2008

_____

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and BRYSON, Circuit Judge.

PER CURIAM.

## DECISION

Gerald A. Lechliter appeals from a judgment of the United States Court of Appeals for Veterans Claims ("the Veterans Court"), which affirmed a decision of the Board of Veterans' Appeals ("the BVA"). We affirm.

## BACKGROUND

Mr. Lechliter served in the United States Marine Corps from October 1967 to July 1969 and in the United States Army from July 1974 until his retirement in May 1999.

When he retired, he had attained the rank of colonel. In April 1999, Mr. Lechliter submitted a claim for service-connection for various conditions. Following an examination by the Department of Veterans Affairs ("DVA"), a DVA rating board in October 1999 granted service connection for various disabilities, resulting in a disability rating of 50 percent. However, the rating board denied his claim for service connection for hyperlipidemia, a history of positive stress tests, and pre-syncopal episodes on the ground that they were not compensable disabilities. The regional office subsequently denied his claim to a disability rating in excess of 10 percent for service-connected residuals of a left-elbow disorder. In November 1999, Mr. Lechliter filed a Notice of Disagreement with the October 1999 rating decision.

Mr. Lechliter also filed a claim for total disability and individual unemployability ("TDIU") with the DVA regional office, in which he claimed that he was unable to work as of May 1999, when he retired from the Army. After an examination, a DVA counseling psychologist concluded that although Mr. Lechliter had "impairments to his employability," he did not have a "serious employment handicap" and recommended vocational assessment. Following vocational-educational counseling sessions in January 2000, a clinical psychologist stated that his "diagnostic impression" was that Mr. Lechliter suffered from an adjustment anxiety disorder. In February 2000, Mr. Lechliter was given a further DVA examination in connection with his TDIU claim, after which it was determined that he could "perform sedentary work for a full 8-hour day as long as he could periodically change position."

In a letter received by the DVA on May 1, 2001, Mr. Lechliter sought to establish service connection for "the stressors that are causing [his] problems." The DVA

provided Mr. Lechliter with a psychiatric examination in July 2002, and in August 2002 it awarded him service connection for major depression at a rating of 70 percent, effective May 1, 2001. Mr. Lechliter appealed to the BVA, which denied his request for an effective date earlier than May 1, 2001, for his major depression condition and denied his request for TDIU benefits for the period from June 1999 through April 2001. In addition, the BVA denied an initial compensable disability rating for postural syncope and denied an initial disability rating in excess of 10 percent for residuals of his left-elbow disability. On appeal, the Veterans Court remanded Mr. Lechliter's claim for an initial rating of greater than zero percent for postural synocope but affirmed the remainder of the BVA's decision.

## DISCUSSION

Pursuant to 38 U.S.C. § 7292(a), we may review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision." Except to the extent that an appeal presents a constitutional issue, we may not review "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

Although the Veterans Court remanded one of Mr. Lechliter's claims to the BVA, that remand does not deprive us of jurisdiction to address this appeal. We have held that "when a veteran has packaged all his claims in a single appeal to the Veterans Court, it would be unfair to deny the veteran an immediate appeal of a final decision as to one or more of his claims simply because an additional claim is remanded for further

proceedings." <u>Elkins v. Gober</u>, 229 F.3d 1369, 1376 (Fed. Cir. 2000). That rule applies here. Mr. Lechliter combined his four claims in a single case. The Veterans Court affirmed the BVA's rulings with respect to three of Mr. Lechliter's claims and remanded with respect to the fourth. The remanded claim, which pertains to the rating decision for postural synocope, is not intertwined with the three claims for which the BVA's judgment was affirmed. Therefore, we have jurisdiction to review the Veterans Court's decision as to those three claims.

I

Mr. Lechliter seeks an effective date earlier than May 1, 2001, for his 70 percent disability rating for depression. Pursuant to 38 C.F.R. § 3.400(b)(2)(i), Mr. Lechliter would have been granted service connection effective the day after he retired if he had filed his claim within one year of leaving the service. Because he did not file within that time, service connection is effective from the "date of receipt of claim, or date entitlement arose, whichever is later." 38 C.F.R. § 3.400(b)(2)(i). The "date of receipt," except for a few exceptional circumstances not applicable here, is "the date on which a claim, information or evidence was received in the Department of Veterans Affairs." 38 C.F.R. § 3.1(r). Here, the BVA found and the Veterans Court confirmed that Mr. Lechliter's letter was received on May 1, 2001, more than one year after his discharge from the service in May 1999.

Mr. Lechliter argues that the clinical psychologist's January 2000 report is evidence of Mr. Lechliter's depression prior to May 2001 and that it should be considered an informal claim for service connection for depression. DVA regulations recognize an "informal claim" if it "identifies the benefits sought." 38 C.F.R. § 3.155(a).

If a formal claim is filed within one year of the informal claim, then the formal claim is given the effective date of the informal claim. Id. Mr. Lechliter argues that in light of a provision in the DVA's Adjudication Procedure Manual ("DVA Manual"), M21-1, Part VI, ¶ 1.09d, which states that the DVA "may accept . . . diagnosis or evaluation of mental disorders conducted by clinical psychologists at a GS13 or higher level," the psychologist's report should have been accepted as an informal claim.

We disagree, for several reasons. The portion of the DVA Manual to which Mr. Lechliter refers merely indicates which government clinical psychologists (those at grade level GS-13 or higher) are competent to diagnose or evaluate mental disorders. It does not relate to the quantum of evidence needed to establish the "date of receipt" of an informal claim for purposes of 38 C.F.R. § 3.1(r). In addition, the psychologist's report cannot be interpreted as an informal claim under 38 C.F.R. § 3.155(a), because it did not "identify the benefit sought." The DVA regulations also provide that until a "formal claim for pension or compensation has been allowed or . . . disallowed," a "[r]eport of examination or hospitalization by DVA or uniformed services" cannot serve as an informal claim. 38 C.F.R. § 3.157(b)(1). See MacPhee v. Nicholson, 459 F.3d 1323, 1327-8 (Fed. Cir. 2006). Here, a formal claim had not been allowed or disallowed at the time of the psychologist's report; for that reason, the report did not constitute an informal claim. Moreover, even assuming that the report was an informal claim under section 3.155(a) or section 3.157(b)(1) at the time it was generated, as opposed to when it was transmitted, a formal claim must be filed within a year in order for an informal claim to mature. 38 C.F.R. § 3.155(a). Mr. Lechliter did not file his May 2001 formal claim within one year of the psychologist's diagnosis in January 2000, and thus

he did not satisfy the requirements of that section.  Finally, the Veterans Court concluded that the psychologist's report was not received until November 2001, after the filing of the formal claim in May 2001.  For that reason as well, the report cannot serve as an earlier claim.

Citing 38 U.S.C. § 5103A, the statute that imposes a duty on the DVA to assist veterans with their claims, Mr. Lechliter argues that the DVA was required to provide him with an additional psychiatric evaluation or to fashion a claim for service connection for depression or a nervous condition.  As to the latter, the duty to assist does not require the DVA to create a claim on behalf of the veteran; it only requires assistance with existing claims.  As to the former, the statutory duty is not triggered without an underlying claim, as is evidenced by the statute's language, which refers to "evidence to substantiate the claimant's claim." 38 U.S.C. § 5103A(a)(1).  Neither of Mr. Lechliter's 1999 claims mentions a nervous condition or depression.  There was therefore no violation of the statutory duty to assist.

With respect to his argument regarding "the legal requirements for establishing a 'chronic' service-connected disability under 38 C.F.R. § 3.03(b)(2000)," Mr. Lechliter provides only a fact-based contention that the DVA should have ruled in his favor.  In particular, he challenges the BVA's finding that his medical record did not contain any indications of psychological problems.  The Veterans Court noted, however, that the BVA found no evidence of psychological problems in his medical examination board record and his separation examination.

The Veterans Court pointed out that the reports of Mr. Lechliter's 1997 and 1998 physical examinations contained check marks next to the words "depression or

excessive worries."  The court, however, concluded that those check marks did not reflect a history of depression.  The court pointed out that the only elaboration on the issue was in the 1997 examination report, in which a physician's note referred to "excessive worries."  The court concluded that the physician's note did not constitute a diagnosis of depression, "much less one that would qualify as a chronic condition."  In taking issue with the court's conclusion on this question, Mr. Lechliter is essentially asking that we review a factual determination as to whether the medical record reflected a depression condition.  That task is outside of our jurisdiction.

Mr. Lechliter notes that the DVA's rating decision denied service connection for three ailments—pilonidal cyst, tonsillectomy, and dental implants—that were referred to in his medical record, and he points out that those "obscure" conditions were considered in the rating decision even though they were not specifically referred to in his April 1999 application for service connection.  Because the rating board noted those conditions, Mr. Lechliter argues that it should have been on notice of his depression and that his depression claim should therefore get an earlier effective date for service connection.  The rating board's consideration of the three listed conditions, for which Mr. Lechliter's medical records reflected diagnoses and treatment, does not indicate that the DVA was on notice of other conditions such as depression.  For the same reason, we reject Mr. Lechliter's argument based on DVA Manual M21-1, Part VI, ¶ 1.01b.  That provision requires the rating board to take additional steps if "evidence of record is insufficient for rating all the claimed and noted disabilities."  As pointed out above, Mr. Lechliter's medical record did not put the DVA on notice of his depression claim.

Finally, in his reply brief Mr. Lechliter asserts that the DVA medical examiner who conducted his examination in June 1999 failed to note that he had complained of suffering from depression. Regardless of whether such a statement was made to the examiner, however, such a statement does not constitute a formal or informal claim, and it cannot serve as the basis for an earlier effective date for his claim of service connection for depression.[1]

II

Regarding his TDIU claim, Mr. Lechliter argues that the Veterans Court misinterpreted 38 C.F.R. § 4.16(a) because it relied on the BVA's finding that he was capable of "gainful employment"; he maintains that the BVA used the wrong legal standard because it did not state that he was capable of "substantially gainful employment." Mr. Lechliter also argues that the "absence of actual evidence" that he could not engage in substantially gainful employment is not evidence that he could engage in substantially gainful employment and that the BVA's finding was flawed for that reason as well.

Section 4.16(a) of the DVA's regulations provides that "[t]otal disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities . . . ." The

---

[1] Mr. Lechliter makes the related claim that his due process rights were violated when the DVA overlooked his depression during his examination. Mr. Lechliter does not offer any plausible basis for the assertion that the DVA's failure to detect and generate a claim for his mental condition resulted in a constitutional deprivation. We reject that contention as baseless.

BVA and the Veterans Court correctly applied section 4.16(a). The Veterans Court noted that after reviewing Mr. Lechliter's medical records the BVA had found that the evidence did not suggest "an incapacity for gainful work" and that "there was no competent medical evidence to suggest he could not follow substantially gainful employment." The evidence relied on by the BVA, including that Mr. Lechliter has a graduate degree, 25 years of military experience, and can perform a sedentary job for 8 hours, supports the finding that he could "secure or follow a substantially gainful occupation." The Veterans Court's observation that there was an absence of evidence to the contrary does not suggest that the court applied the regulation incorrectly. Furthermore, Mr. Lechliter has not shown that the BVA's use of a shorthand reference, finding that he could engage in "gainful employment," indicates that the BVA failed to apply the "substantially gainful employment" standard correctly.

Mr. Lechliter argues that the BVA improperly relied on a December 1999 vocational rehabilitation report as part of its basis for denying his TDIU claim. However, nothing that Mr. Lechliter points to precludes using information from a vocational rehabilitation assessment once it has been performed. Mr. Lechliter relies on a DVA General Counsel's opinion, Op. Gen. Counsel Prec. 08-94 (1994). That opinion, however, addresses when a vocational rehabilitation assessment can be performed, not what uses the DVA can make of such an assessment in benefits decisions. The opinion states that "[a]bsent a policy determination on the use of an employability assessment in deciding [individual unemployability] claims, and absent appropriate regulations, administrative procedures, and delegation of authority implementing such policy, we recommend against inviting or encouraging even consensual use of the [vocational

rehabilitation] assessment on an ad hoc basis in future cases." Id. at 5. That statement, however, constitutes only a recommendation. Moreover, the opinion authorizes a vocational rehabilitation assessment agreed to by the parties for the purpose of determining individual employability to be "conducted on an ad hoc basis by any agency competent to do so as informally designated by the Secretary." Id. The opinion thus condones the use of information from a previously conducted vocational rehabilitation assessment in a TDIU assessment.

Mr. Lechliter next argues that the BVA and the Veterans Court should have weighed the psychologist's report more heavily in determining whether to award benefits. In addition, he contends that the compensation and disability examination and the vocational rehabilitation examination provided inadequate support for the decision to deny his claim. He also contends that the BVA failed to advert to the effect of his various physical conditions, such as "inadequately controlled hypertension exacerbated by stress" on his ability to obtain substantially gainful employment. Each of these arguments in essence raises a factual contention, and for that reason, we lack jurisdiction to consider them.

Mr. Lechliter next asserts that the Veterans Court misinterpreted the statutory, regulatory, and case law requirements governing a compensation and pension disability examination and reports of medical examinations. In particular, he asserts that the Veterans Court misinterpreted 38 C.F.R. §§ 3.340(a), 4.15, and 4.16(a). Those regulations, however, were not mentioned by the Veterans Court, and it does not appear that the Veterans Court interpreted them in any way. Mr. Lechliter makes various claims about the inadequacy of the examinations conducted in his case, such

as whether the reports of those examinations were comprehensive enough, whether the clinician should have used a different approach in considering the service connection determinations, whether expert medical evidence should have been given more weight, and whether the BVA correctly weighed the evidence. Those issues present factual contentions that are not within our jurisdiction to review.

III

Finally, Mr. Lechliter argues that the Veterans Court misinterpreted statutes, regulations, or case law when it denied his request to remand with instructions to increase the rating for his elbow ailment. He argues that the decision review officer misinterpreted DVA Manual M21-1, Part VI, ¶ 2.07(b) and 38 C.F.R. § 3.159(a) because the decision review officer substituted his own judgment for that of the medical examiner. The crux of Mr. Lechliter's argument, however, is that the decision review officer should have accorded more weight to an MRI examination performed in June 2002 and should have ordered another evaluation to study the significance of the MRI. Mr. Lechliter also argues that under 38 C.F.R. § 4.40 he was entitled to a higher rating because the regulation allows higher ratings based on pain and he asserts that he has pain. Once again, these arguments are factual in nature; Mr. Lechliter has not pointed to any improper interpretation of rules or regulations, but simply contends that the application of those authorities should have resulted in a different outcome in his case.

For the foregoing reasons, we affirm the decision of the Veterans Court.