NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**MARCELINO ESCOBAR,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**

*Respondent-Appellee.*

---

2012-7097

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-3406, Chief Judge Bruce E. Kasold.

---

Decided: July 12, 2013

---

THOMAS R. BENDER, Chisholm Chisholm & Kilpatrick, Ltd., of Providence, Rhode Island, argued for claimant-appellant. Of counsel on the brief was CHRISTOPHER J. CLAY, Disabled American Veterans, of Cold Springs, Kentucky.

DOMENIQUE G. KIRCHNER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were STUART F.

DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, SCOTT D. AUSTIN, Assistant Director, and A. BONDURANT ELEY, Trial Attorney. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and LARA K. EILHARDT, Attorney, United States Department of Veterans Affairs, of Washington, DC.

---

Before RADER, *Chief Judge,* MOORE, *Circuit Judge* and BENSON, *District Judge.* *

RADER, *Chief Judge.*

The United States Court of Appeals for Veteran Claims (Veterans Court) affirmed the decision of the Board of Veteran's Appeals (Board) that Marcelino Escobar was not entitled to total disability resulting from individual unemployability (TDIU). Because Mr. Escobar appeals issues of fact beyond this court's statutory jurisdiction, this court dismisses.

## I.

Mr. Escobar served in the Army from January 1947 to June 1949. Shortly after he began serving, Mr. Escobar was injured by an accidental gunshot to the abdomen. Thereafter, from October 28, 1947 to January 12, 1998, he was rated at 30% disability for service-connected residuals from the gunshot. Mr. Escobar's rating was increased to 60% on January 13, 1998.

In April 2006, Mr. Escobar filed a claim for TDIU under 38 C.F.R. § 4.16. The Regional Office (RO) denied

---

*     Honorable Dee V. Benson, District Judge, United States District Court for the District of Utah, sitting by designation.

entitlement to a TDIU rating in August 2006 because the RO did not find Mr. Escobar "unable to secure or follow a substantially gainful occupation as a result of service connected disabilities." J.A. 12; 38 C.F.R. § 4.16(a).

After the denial of a TDIU rating, Mr. Escobar was afforded a hearing before a VA Decision Review Officer in January 2007. At that hearing, Mr. Escobar testified about his TDIU claim. He testified that he was a "[p]hysician [t]echnician" which required him to "look trough [sic] a microscope" and "work night shifts." J.A. 20. He also testified that he "felt a lot of fatigue," had "back aches," and his "hips hurt." *Id.* Mr. Escobar then testified that he retired "at the end of 1993" to receive social security benefits. J.A. 21.

A month after the hearing, in February 2007, Mr. Escobar had a "muscles" exam and stomach exam to evaluate any functional impairment associated with his service-connected injury. The "muscles" examination report indicated that Mr. Escobar had retired in 1999 after working as a medical technologist. J.A. 33. The examiner noted that if Mr. Escobar was still working, his service-connected disability would limit his performance because he would be unable to lift more than fifty pounds, bend forward or carry more than fifty pounds. J.A. 34. The examiner further noted that the Veteran would be able to perform his activities at a computer station. *Id.* The stomach examination report indicated that the Veteran's service-connected gunshot wound had not left any sequelae, that the Veteran had retired in 1996, and that he was eligible for retirement by reason of age and work. J.A. 38–39.

Based on the record—including the February 2007 exams—the Board denied service connection for TDIU. More specifically, the Board determined "the Veteran's service-connected disabilities do not preclude the Veteran from obtaining and sustaining substantially gainful

employment. While the Veteran's service-connected disabilities would limit him from heavy lifting and bending over, he would have the ability to work at a computer." J.A. 54–55.

Mr. Escobar appealed the denial of a TDIU rating. In his appeal to the Veterans Court, Mr. Escobar argued that the Board erred by failing to "recognize that no medical opinion sufficiently addressed TDIU." J.A. 5. However, the Veterans Court concluded "[t]he Board rendered its TDIU determination by relying on several medical reports describing Mr. Escobar's employment situation and the occupational effects of his disabilities." *Id.* Thus, a single judge of the Veterans Court affirmed the Board. Mr. Escobar appeals.

## II.

This court's jurisdiction to review the Veterans Court decision is defined by 38 U.S.C. § 7292. This court has exclusive jurisdiction to interpret statutory provisions and reviews the Veterans Court's statutory interpretations without deference. 38 U.S.C. § 7292(c); *Cook v. Principi*, 353 F.3d 937, 938 (Fed. Cir. 2003). Except to the extent that a constitutional issue is presented, this court may not review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2); *Cook*, 353 F.3d at 938–39.

As an initial matter, Mr. Escobar frames his objections to the adequacy of the VA's medical opinions as a constitutional due process violation. However, it is well-established that an appellant's mere characterization of an issue as constitutional "does not confer upon [this court] jurisdiction that [it] otherwise lack[s]." *Helfer v. West*, 174 F.3d 1332, 1335 (Fed. Cir. 1999). Mr. Escobar fails to show how having received a hearing and two separate medical opinions—that both the Board and Veterans Court determined contained sufficient detail—

resulted in insufficient due process or a violation of his constitutional rights.

Finding no genuine constitutional issue, this court turns to Mr. Escobar's arguments of alleged statutory or regulatory interpretation. First, Mr. Escobar argues that because the Board—as affirmed by the Veterans Court—failed to "recognize that no medical opinions sufficiently addressed TDIU," the Veterans Court misinterpreted 38 U.S.C. § 5103A(d)(1) by failing to require an opinion "necessary to make a decision." The duty to assist in Section 5103A(a)(1) obligates the VA to make reasonable efforts to assist the veteran in "obtaining evidence necessary to substantiate [a] claim." 38 U.S.C. § 5103A(a)(1). In the case, as here, where the claim is for disability compensation, the duty to assist "shall include providing a medical examination or obtaining a medical opinion when such an opinion is *necessary to make a decision* on the claim." 38 U.S.C. § 5103A(d)(1) (emphasis added).

However, the Veterans Court neither interpreted Section 5103A(d)(1) nor expressly referenced it. And, contrary to Mr. Escobar's arguments, the Veterans Court did not impliedly interpret Section 5103A(d)(1) to mean that a medical opinion need not contain any explanation of the basis for the opinion provided. Instead, the Veterans Court concluded "[t]he Board rendered its TDIU determination by relying on several medical reports describing Mr. Escobar's employment situation and the occupational effects of his disabilities." J.A. 5. Thus, there is no statutory or regulatory interpretation at issue here—it is a factual question outside of this court's jurisdiction.

Furthermore, Mr. Escobar concludes that the Veterans Court misinterpreted the words of 38 U.S.C. § 5103A(d)(1)—"an examination or opinion [] necessary to make a decision"—to "mean something less than an opinion that addresses the plain language" of 38 C.F.R.

§ 4.16(a), *i.e.*, an opinion that explicitly addresses whether or not a veteran is "unable to secure or follow a substantially gainful occupation." Appellant's Br. 17. Whether an opinion addresses the exact language of Section 4.16 is a question of sufficiency of evidence and again a factual determination not properly before this court. Moreover, the Veterans Court concluded that there was no evidence "that the record medical evidence left the Board uninformed on the issue of unemployability, or that an additional medical opinion was warranted." J.A. 6. These are factual determinations, not statutory or regulatory interpretations. Thus, contrary to Mr. Escobar's argument, nothing in the record indicates the Veterans Court misinterpreted 38 U.S.C. § 5103A(d)(1) or 38 C.F.R. § 4.16.

Finally, Mr. Escobar argues "the adequacy of an expert's conclusion and rationale must be treated as a question of law subject to independent judicial review to insure a more uniform application of the 'adequacy' requirement." Reply Br. 12–13. However, whether a medical opinion is "adequate" is squarely a question of fact. *See, e.g., Pathak v. Shinseki,* 412 F. App'x 301, 303–304 (Fed. Cir. 2011) (noting this court lacks jurisdiction to review fact-based assertions of deficiencies in VA medical examinations); *Rayburn v. Peake,* 306 F. App'x 580, 582 (Fed. Cir. 2009) ("Determining whether previous [VA] examinations are adequate is a question of fact that falls outside this court's jurisdiction."). Even the cases that Mr. Escobar cites as support for an adequacy requirement explicitly acknowledge that "[w]hether a medical opinion is adequate—and consequently, whether the Secretary complied with his duty to assist—are *factual* determinations by the Board." *Mitchell v. Shinseki*, 25 Vet. App. 32, 43 (2011) (emphasis added).

## III.

Mr. Escobar appeals questions of fact. This court has no jurisdiction over such questions.

## DISMISSED

No costs.