# United States Court of Appeals for the Federal Circuit

---

**ROBERT D. PRINKEY,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2012-7138

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 10-3277, Judge Lawrence B. Hagel.

---

Decided: November 19, 2013

---

ZACHARY STOLZ, Chisholm Chisholm & Kilpatrick, Ltd., of Providence, Rhode Island, argued for claimant-appellant. On the brief were THOMAS R. BENDER; and CHRISTOPHER J. CLAY, Disabled American Veterans, of Cold Springs, Kentucky. Of counsel was ROBERT VINCENT CHISHOLM, Chisholm Chisholm & Kilpatrick, of Providence, Rhode Island.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART

F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MICHAEL S. MACKO, Trial Attorney. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel and TRACEY PARKER WARREN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before NEWMAN, CLEVENGER, and TARANTO, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Robert D. Prinkey appeals from the final decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("BVA") sustaining the severance of service connection for diabetes mellitus type II and related disabilities and denying entitlement to a total disability rating based on individual unemployability. *Prinkey v. Shinseki*, No. 10-3277, 2012 WL 985754 (Vet. App. Mar. 23, 2012). For the reasons stated below, we hold that a central contention he makes is outside our statutory jurisdiction, and we otherwise affirm.

I

The law permits severance of service connection for previously awarded disability benefits, i.e., reversing an earlier finding that a particular disability was connected to military service and cutting off benefits that had been awarded based on that finding. In particular, 38 C.F.R. § 3.105(d) (2011) provides that "service connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being upon the [Veterans Administration])."

The language of § 3.105(d) is written in the present tense, asking not whether the original decision of service connection was correct at the time it was made, but

whether the original decision "is clearly erroneous." As the Veterans Court has observed, in meeting its burden of proof under § 3.105(d), the Veterans Administration ("VA") may consider medical evidence and diagnoses that postdate the original award of service connection. *See Stallworth v. Nicholson*, 20 Vet. App. 482, 488 (Vet. App. 2006). Where the VA demonstrates, based on all the relevant evidence, that an original award of service connection is clearly and unmistakably erroneous, service connection may be severed. The severance of service connection means that all previous benefits resulting from the original service connection decision are terminated.

In order for error to be clear and unmistakable, it must be outcome determinative, i.e., one whose avoidance "would have manifestly changed the outcome" of a prior decision. *Cook v. Principi*, 318 F.3d 1334, 1344 (Fed. Cir. 2002) (en banc); *see also Bustos v. West*, 179 F.3d 1378, 1381 (Fed. Cir. 1999).

## II

Mr. Prinkey served in the United States Army from 1969 to 1970, including time in Vietnam. He was diagnosed with diabetes in 1996. Certain diseases, including diabetes mellitus type II, are presumed to be service connected if the veteran was exposed to Agent Orange during service. *See* 38 U.S.C. § 1116(a)(2)(H) (2002). On April 14, 2003, the VA received Mr. Prinkey's original disability claim for benefits on account of his diabetes and related conditions, asserting exposure to Agent Orange and presumptive service connection. In June of 2003, the VA provided Mr. Prinkey with a medical evaluation to assist him in developing his claim. The medical examination concluded that Mr. Prinkey "has diabetes mellitus which can be related to the Agent Orange exposure." R.A. 28. Soon thereafter, on July 8, 2003, the VA Regional Office ("RO") in Huntington, West Virginia issued a rating decision granting service connection to Mr. Prinkey for his

"diabetes mellitus claimed as secondary to agent orange exposure" evaluated at 20%, as well as lesser rated service connection for other disabilities secondary to the service connected diabetes. R.A. 29.

Mr. Prinkey sought to reopen his claim on August 1, 2005. A further medical examination was performed on January 5, 2006, at which time the medical examiner observed that there was "no C-file [Mr. Prinkey's full claims file] to review." R.A. 52. Following the January 5 medical examination, the RO in Cleveland, Ohio issued another rating decision on February 24, 2006. That rating decision retained Mr. Prinkey's 20% rating for diabetes but increased certain of his disabilities secondary to the diabetes. The RO adjudicator deferred Mr. Prinkey's claim to entitlement for Individual Unemployability pending a medical opinion on that subject. The RO ordered that Mr. Prinkey's full claims file be sent to the medical examiners (a nurse practitioner and an endocrinologist) who had performed the January 5 examination.

With regard to the issue of Mr. Prinkey's employability, on March 21, 2006, the nurse practitioner concluded, apparently on the basis of her January 5, 2006, examination, that Mr. Prinkey's employability was severely impaired by his diabetes. Thereafter the nurse practitioner reviewed Mr. Prinkey's full claims file and discovered information that had not previously been available to medical evaluators. The nurse practitioner's subsequent evaluation on April 18, 2006, stated:

> Patient has a history of pancreatectomy which more likely than not resulted in the pancreancreatic [sic] insufficiency and inadequate insulin secretion which caused the patient's diabetes. The cause for his pancreatectomy may have been a tumor, or per his C-file, a note 5/30/03 by Dr. D. [S.]: "He has had a multitude of medical problems especially since 1993 and had surgery to remove

most of his pancreas, gall bladder and stomach because of what he was told was his history of drinking despite his reported having quit in 1974." The date of the pancreatectomy was approximately 1994 and patient reports diabetes diagnosed in 1996. C-file has varying dates from 1994, and 1995. Therefore, it is more likely than not that the diabetes mellitus type II, on insulin resulted from the pancreatectomy.

R.A. 54.

The nurse practitioner concluded that Mr. Prinkey's diabetes more likely than not resulted from the surgery that removed most of his pancreas, not from his exposure to Agent Orange. Her evaluation was further reviewed the same day by the endocrinologist, whose evaluation, as contained in an addendum to the nurse practitioner's report, stated:

Review of records indicate [sic] that the veteran does not have DM2 [diabetes mellitus type II]. The veteran has diabetes secondary to pancreatectomy for chronic alcohol abuse. He has minimal beta cell function, as indicated by his C-Peptide level of 0.7, barely detectable. It is as likely as not that his remaining pancreatic function will continue to decrease with time, leaving him entirely insulin dependent. His pancreatic failure and pancreatic resection have nothing to do with Agent Orange exposure.

R.A. 53.

Whereas the nurse practitioner's evaluation was that Mr. Prinkey's diabetes was more likely than not caused by the removal of most of his pancreas, not his exposure to Agent Orange, the endocrinologist's opinion left no room for doubt: his diabetes resulted from his pancreatectomy

for chronic alcohol abuse and had no association with his possible exposure to Agent Orange.

On the basis of the April 18, 2006, evaluations, the Cleveland RO entered a further rating decision, dated July 17, 2006, and conveyed by letter dated July 20, 2006, to Mr. Prinkey. The letter stated that "[w]e have reviewed medical records concerning your service-connected condition(s) and noted new evidence reference [sic] the origins of your diabetes mellitus type 2 (DMII). We propose to sever your service connection." R.A. 56. The rating decision explained that the adjudicator had reviewed Mr. Prinkey's medical records, which showed his pancreatectomy in 1994 and his diagnosis of diabetes in 1996. The rating decision accepted the opinion of the endocrinologist that his pancreatectomy was secondary to his history of alcohol abuse, and had noted Mr. Prinkey's minimal beta cell function. The rating decision accepted the endocrinologist's opinion that Mr. Prinkey's pancreatic failure and resection had nothing to do with his possible Agent Orange exposure. The rating decision thus removed service connection as the explanation for Mr. Prinkey's diabetes, his diabetes-related injuries and his claim to individual unemployability due to his diabetes and related injuries.

The July 17 letter afforded Mr. Prinkey sixty days in which to respond with new relevant evidence. When he did not respond in the stated time, the Cleveland RO informed Mr. Prinkey by letter on September 29, 2006, that it was acting on the rating decision of proposed severance of service connection for diabetes and related injuries "because our records show that your diabetes mellitus was not caused by exposure to agent orange." R.A. 64. Consequently, all of Mr. Prinkey's ratings dependent on diabetes resulting from exposure to Agent Orange were severed effective December 1, 2006. Mr. Prinkey timely filed a Notice of Disagreement ("NoD") with the rating decision severing his service connections,

thus indicating his desire to appeal the adverse rating to the BVA.

The Cleveland RO prepared a Statement of the Case ("SoC"), a document that explains in detail the basis and rationale for the adverse rating decision. The SoC explained that service connection:

> can be severed only on the basis of clear and unmistakable error. In this case it was determined that there was clear and unmistakable evidence that the veteran's diabetes was not due to the presumption of relationship to herbicides but was due to residuals of a pancreatectomy. Evidence of the pancreatectomy is noted throughout the evidence of record. The most recent VA examination contained a C-peptide test result that the veteran was insulin deficient and not insulin resistant as would be the case with type II diabetes. Since the veteran's diabetes is not truly type II and is found secondary to a pancreatectomy long after service, severance of service connection was proper.

R.A. 80–81.

Mr. Prinkey's NoD was followed by his appeal to the BVA. A hearing was held at his request on July 21, 2008, and the BVA issued its decision on January 26, 2009. During the July hearing, Mr. Prinkey mentioned his previous pancreatic surgery and current medical treatment he was receiving for his diabetes. Because of the possibility of additional relevant records, the BVA remanded Mr. Prinkey's case for further development. Following remand additional medical records were received. The additional records included outpatient treatment records from various VA medical centers covering the periods from March 7, 2002, to January 20, 2010, treatment reports by Dr. [D. D.], and a CT report from Dr. [R. R.] dated May 1, 2001. Following receipt and analysis of the additional records by the Appeals Management

Center, a supplemental SoC was prepared. The supplemental SoC recited the requirements for severance of service connection set forth in § 3.105(d), and concluded that severance of Mr. Prinkey's service connection for diabetes and related injuries was grounded in clear and unmistakable error in the original rating of service connection. The supplemental SoC reasoned that the available evidence showed the onset of Mr. Prinkey's diabetes occurred in 1996, while the development of his initial pancreatic disorder occurred at least two years before in 1994. Further, the other evidence showed that his pancreatic disorder resulted from his history of alcohol abuse and "had no relationship to your military service to include [his] exposure to herbicide of Agent Orange." R.A. 104.

The supplemental SoC signaled the completion of the remand, and Mr. Prinkey's appeal was returned to the BVA, with the issue framed as whether under § 3.105(d) the evidence establishes that Mr. Prinkey's July 8, 2003, rating of service connection for "diabetes mellitus claimed as secondary to agent orange exposure," R.A. 29, is clearly and unmistakably erroneous.

## III

The BVA decision dated August 4, 2010, first recited the procedural rights afforded to a veteran for whom the VA proposes to sever an award of service connection and concluded that those rights had been satisfied in this case.

The BVA focused its analysis of the facts on the two relevant rating decisions: the July 8, 2003, rating decision of service connection, which was based on the June 2003 medical evaluation, and the September 29, 2006, rating decision severing service connection, which was based on the April 18, 2006, medical evaluations.

With regard to the 2006 medical evaluations, the BVA concluded that the endocrinologist was unequivocal in her assessment that Mr. Prinkey's diabetes was caused by his pancreatectomy and that his pancreatic failure had nothing to do with exposure to Agent Orange, stating that "there could not be a more definite statement than she made in the addendum that she authored." R.A. 121. The BVA found that the endocrinologist provided clinical findings to support her statement of etiology, referring to Mr. Prinkey's minimal beta cell function. The endocrinologist had also acknowledged the nurse practitioner's report which referred to the dates of onset of diabetes and the previous pancreatic surgery, and connected Mr. Prinkey's inadequate insulin secretion to pancreatic insufficiency following the surgery. The BVA specifically found that the evidence showed a diagnosis of diabetes two years after the pancreatic surgery and thus that there were no deficiencies in the factual foundation referred to by the nurse practitioner and acknowledged by the endocrinologist. The BVA further found that the endocrinologist was "a pertinent specialist of the highest level of expertise as to this issue." R.A. 121.

With regard to the medical evaluation upon which service connection was granted in 2003, the BVA concluded as follows:

> The examination reports upon which the RO relied in granting service connection were uninformed as to the resection of the Veteran's pancreas. The June 2003 examination report did not reference a resection of the pancreas or alcohol induced disease of the pancreas and the examiner did not have the claims file before him. The examination was inadequate because the examiners [sic] did not have sufficient facts before him to render a correct statement of etiology. All later statements that may have referred to diabetes as due to Agent Orange exposure are devoid of ex-

planation and depend entirely on what the June 2003 examiner incorrectly determined and the RO endorsed by its label of his diabetes as due to Agent Orange exposure. Indeed, it was not until medical professionals, the nurse practitioner and the endocrinologist, reviewed the claims file that anyone who offered medical examination results were aware of the pancreas resection. The only valid opinion in this case is that of the endocrinologist as stated in the April 2006 addendum.

R.A. 122.

Based on the foregoing analysis of the record, the BVA held that the VA had shown clear and unmistakable error in the 2003 decision of service connection for diabetes mellitus and denied Mr. Prinkey's appeal. Mr. Prinkey then timely appealed the BVA decision to the Veterans Court.

IV

Before the Veterans Court, Mr. Prinkey challenged the BVA's decision on two grounds. First, Mr. Prinkey argued that the BVA "failed to observe applicable law concerning the standards for severance of service connection based on clear and unmistakable error." *Prinkey,* 2012 WL 985754, at *3. The gist of Mr. Prinkey's argument on this point was that the BVA had erred by "weighing the evidence" when considering whether the VA had shown clear and unmistakable error under § 3.105(d) in the 2003 rating decision. As the Veterans Court's opinion explains, the issue before the BVA was not weighing the 2003 rating decision against the 2006 severance decision. *Id.* at *4. The BVA had found, and the Veterans Court agreed, that the 2003 medical opinion relied on by the rating decision was inadequate, and thus not reliable, because the examiner was not sufficiently informed. *Id.* The Veterans Court held that the BVA had correctly applied § 3.105(d) without weighing of the evidence. *Id.*

Mr. Prinkey's second ground of challenge concerned the adequacy of the medical opinion by the endocrinologist upon which the 2006 severance decision was based. Mr. Prinkey argued that the endocrinologist had insufficient rationale to support her conclusion that his diabetes is attributable to his pancreatic surgery and not to exposure to Agent Orange. In addition, Mr. Prinkey argued that the endocrinologist opined on an incomplete record because she did not have before her the CT radiology report from May 2001. *Id.* This 2001 report did not become part of Mr. Prinkey's C-file until January 2009, after remand and before final adjudication by the BVA. *Id.* Because the BVA had found the April 2006 medical opinion adequate, the Veterans Court took Mr. Prinkey's argument as a challenge to the Board's finding of fact. *Id.* at *4. The Veterans Court held that the BVA had not committed clear error because an August 2002 record in the file at the time of the 2006 medical evaluations informed the endocrinologist that Mr. Prinkey had had surgery to remove most of his pancreas—information that duplicated the information in the 2001 CT scan. *Id.* Any possible error in not having the 2001 CT scan before the April 2006 medical examiners was thus harmless. *Id.* In addition, the Veterans Court rejected Mr. Prinkey's argument that the 2006 medical opinions lacked sufficient rationale. *Id.*

Rejecting both of Mr. Prinkey's challenges to the BVA's decision affirming the severance of service connection under § 3.105(d), the Veterans Court affirmed, and Mr. Prinkey timely appealed to this court.

V

Regarding appeals from the Veterans Court, we have exclusive jurisdiction to interpret constitutional and statutory provisions and to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof by the Veterans Court. 38 U.S.C.

§ 7292(a),(c).    However, except to the extent that an appeal presents a constitutional issue, we are barred from judicial review of "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."  38 U.S.C. § 7292(d)(2).

As this court explained in *Forshey v. Principi*, 284 F.3d 1335, 1345 (Fed. Cir. 2002) (en banc), before the enactment of § 7292 in 1988, there was virtually no judicial review of decisions by the VA.  After extensive debate about the kind of judicial review that should be afforded to veterans, Congress settled on creation of the Veterans Court and on limited review by this court of decisions of the Veterans Court.  The Veterans Court, an Article I tribunal, presides over the BVA, and has authority to decide legal issues and factual disputes under a clear error standard of review.  38 U.S.C. § 7261(a).  But except for constitutional issues, the language and legislative history of the 1988 statute (creating the Veterans Court and vesting our court with appellate jurisdiction) make clear beyond any possible doubt that this court has no power to resolve any factual dispute in a case decided by the Veterans Court. *See Forshey*, 284 F.3d at 1344–47.

VI

In the light of our jurisdictional authority over decisions of the Veterans Court, we turn to Mr. Prinkey's appeal to this court.  His principal ground for appeal is a direct challenge to the sufficiency of the April 2006 medical evaluations that led to the severance of his service connection.  Appellant Br. 25–34, 49–61.  He frames the sufficiency of a medical opinion as a legal issue, and argues that we thus have jurisdiction to assess the April 2006 medical evaluation independently and to conclude that it is insufficient as a matter of law to show that the 2003 service connection rating is clearly and unmistakably erroneous. *Id.* at 39–43.  As for relief, Mr. Prinkey

asks this court to remand the case with instructions to reinstate his service connection. *Id.* at 61.

Mr. Prinkey argues that the endocrinologist's "74 word addendum" medical opinion is insufficient because it lacks a full explanation of the basis for the rejection of the 2003 rating decision. *Id.* at 49. The VA disagrees, pointing to the analysis of the BVA and the Veterans Court of the same addendum finding it to be sufficient. Appellee Br. 39–41. This is the factual dispute Mr. Prinkey asks this court to decide. The VA argues that such a dispute is beyond our jurisdiction, *id.* at 15–24, and, for the reasons that follow, we agree.

We have previously addressed the issue of our jurisdiction to review the facts underlying the assessment of clear and unmistakable error by the Veterans Court. In *Belcher v. West*, 214 F.3d 1335 (Fed. Cir. 2000), *modified on other grounds*, *Forshey v. Principi*, 284 F.3d 1335, 1359 (Fed. Cir. 2002) (en banc), the question was whether Mr. Belcher was entitled to the presumption of soundness upon his entry into the Navy. *See* 38 U.S.C. § 1111 ("[E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment."). The VA argued that evidence of Mr. Belcher's psychiatric condition pre-existing his enrollment was clear and unmistakable to rebut the presumption of soundness. The Veterans Court agreed, and held as a matter of fact that "the evidence in this case is sufficient to rebut the presumption of soundness clearly and unmistakably." *Belcher v. West*, 16 Vet. App. 465 (Vet. App. 1999). On appeal to this court, Mr. Belcher asked us to review whether the evidence regarding Mr. Belcher's pre-existing condition rises to the level of clear and unmistakable evidence. *Belcher*, 214 F.3d at 1337–

38.  As in the case now before us, in *Belcher* we were asked to judge the adequacy of the evidence as clear and unmistakable.  We held that we lacked jurisdiction to review the question presented.  *Id.*

After *Belcher*, we have been asked on several occasions to exercise our jurisdiction to judge the sufficiency of a medical opinion.  In each instance, by short opinions in non-precedential format, we have dismissed the appeals for want of jurisdiction on the ground that whether a medical opinion is adequate is a question of fact.  *See Escobar v. Shinseki*, No. 2012-7097, 2013 WL 3481718, at *3 (Fed. Cir. 2013) ("[W]hether a medical opinion is 'adequate' is squarely a question of fact."); *Washington v. Shinseki*, 452 F. App'x 983, 985 (Fed. Cir. 2011) ("The adequacy of a medical opinion is a question of fact."); *Pathak v. Shinseki*, 412 F. App'x 301, 303–04 (Fed. Cir. 2011) (holding that adequacy of medical opinion is a question of fact); *Elliott v. Shinseki*, 415 F. App'x 251, 252 (Fed. Cir. 2011) (citing *DeRamos v. Shinseki*, 358 F. App'x 167 (Fed. Cir. 2009) and *Cole v. Shinseki*, 309 F. App'x 399 (Fed. Cir. 2009) for the proposition that adequacy of a medical opinion is an unreviewable finding of fact); *Rayburn v. Peake*, 306 F. App'x 580, 582 (Fed. Cir. 2009) (same); *Lechliter v. Peake*, 282 F. App'x 815, 820 (Fed. Cir. 2008) (same).

In each of these several cases, we correctly determined that the sufficiency of a medical opinion is a matter beyond our jurisdictional reach, because the underlying question is one of fact.  And the Veterans Court treats the issue the same way: "[w]hether a medical opinion is adequate is a finding of fact which this court reviews under the 'clearly erroneous' standard of review." *D'Aries v. Peake*, 22 Vet. App. 97, 104 (Vet. App. 2008).

Indeed, the result Mr. Prinkey seeks—for this court to independently judge the adequacy of medical opinions rendered in the VA and to order the VA to act on the

decisions in which we would reverse the assessment of medical opinions made by the Veterans Court—would simply turn the jurisdictional order set by Congress in 1988 on its head. Instead of the Veterans Court acting as the sole appellate judge of medical evidence (except where a constitutional issue is before this court) while deferring to the BVA's assessment of facts under the clear error standard, Mr. Prinkey would override the authority of the Veterans Court by lodging independent review of medical opinions in this court. This is precisely what Congress forbade. 38 U.S.C. § 7292(d)(2). On Mr. Prinkey's principal ground, we hold that the adequacy of a medical opinion is a matter beyond our appellate jurisdiction. We must accept as correct the judgment by the Veterans Court that the 2006 medical examination is sufficient.

## VII

Mr. Prinkey raises two other issues that warrant mention. First, he argues that the Veterans Court misconstrued § 3.105(d). But he has not identified an error. The Veterans Court did not say that an inadequate medical opinion can suffice under the regulation to establish that a prior diagnosis is clearly and unmistakably erroneous. Rather, it agreed with the BVA as a matter of fact that the 2006 medical examination was sufficient whereas the 2003 medical examination was not. *Prinkey,* 2012 WL 985754, at *4–5. Moreover, neither the Board nor the Veterans Court relied exclusively on the April 2006 medical opinions. They considered all of the evidence on record, and nothing in § 3.105(d) precludes severance on such a basis.

Second, Mr. Prinkey argues that his constitutional rights were violated, but that argument is meritless. The BVA, in adjudicating his claim, gave him all the process that is constitutionally required. It afforded him repeated opportunities to challenge the April 2006 medical opinions as deficient, in evidentiary foundation or in explanation,

and to submit his own contrary evidence.  And the BVA scrutinized the medical opinions, along with other evidence, to ensure that it was untainted by the absence of material information, and the BVA evaluated the weight of the opinion after that scrutiny.  Whatever due process requires, it requires no more than that.

## VIII

The central issue Mr. Prinkey presents is beyond our statutory jurisdiction.  His other challenges, while within our jurisdiction, lack merit.

## **AFFIRMED**

### COSTS

Each side shall bear its own costs.