NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NORMAN B. JOHNSON,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-1198

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-7673, Judge Grant Jaquith.

---

Decided:  March 7, 2023

---

DANIEL ROBERTS, Dechert LLP, Philadelphia, PA, argued for claimant-appellant.  Also represented by AMANDA K. ANTONS, Chicago, IL; KATHERINE A. HELM, New York, NY.

TANYA KOENIG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY; JULIE HONAN, Y. KEN LEE, Office of General

Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, CUNNINGHAM, and STARK, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Norman B. Johnson appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' denial of service connection for pes planus (flat feet). *See Johnson v. McDonough*, No. 19-7673, 2021 WL 2170817 (Vet. App. May 28, 2021) (*Decision*). Because we lack jurisdiction to review the issues raised in Mr. Johnson's appeal, we *dismiss*.

## BACKGROUND

Mr. Johnson served in the United States Marine Corps from July 1980 to July 1984 and then again from September 1984 to November 1991, when he was honorably discharged. J.A. 1462. Much of Mr. Johnson's treatment records from his time in service are illegible. J.A. 804–1104. One record, from February 27, 1981, includes notations that appear to read "pes planus," "fit for orthotics," and "flat feet all life." J.A. 887–88. Another record describing a physical examination on August 24, 1983, also notes pes planus. J.A. 1426 (June 2012 Department of Veterans Affairs ("VA") examination request summarizing Mr. Johnson's service treatment records).

In 2012, Mr. Johnson filed a service connection claim for a "bilateral foot condition," pes planus. J.A. 1439. The Regional Office requested a medical examination of Mr. Johnson, asking the examiner "[w]as the Veteran's bilateral pes planus, which existed prior to service according to the Veteran, aggravated beyond its natural progression by military service?" J.A. 1425–27. The examiner reviewed Mr. Johnson's medical record and examined him on July

27, 2012.  J.A. 1421.  The examiner found that Mr. Johnson had pain in both feet and that his condition impacted his ability to work, among other findings.  J.A. 1412–17.  Specifically, the examiner stated "pt can not [*sic*] contin[u]ously stand more than 3 hours because this causes pain."  J.A. 1417.  The examiner checked a box on the Compensation and Pension Exam Report indicating that "[t]he claimed condition, which clearly and unmistakably existed prior to service, was clearly and unmistakably not aggravated beyond its natural progression by an in-service injury, event, or illness."  J.A. 1420.  The examiner explained: "[I] base th[i]s on the patient[']s lack of documentation of seeking treatment in the military and sinc[e] his discharge from the military.  I also base this that pt has no characteristic calluses second[a]ry to functional or structural eti[o]logies, no dysfu[n]ction of posterior tibialis and no sign[i]ficant arthritic changes."  *Id.*

The Regional Office denied Mr. Johnson's service connection claim.  J.A. 1169–73.  Mr. Johnson appealed to the Board of Veterans' Appeals.  J.A. 1123–26.  He submitted three statements concerning conditions he experienced during service that he felt aggravated his pes planus.  J.A. 1123–26; J.A. 613–15; J.A. 102–04.

In a July 2013 statement, Mr. Johnson described rigorous training and activities including miles of running on hard surfaces and sand, forced marches with a heavy pack, rappelling, spy rigging, and physical training conducted on the steel flight decks of ships.  J.A. 1123–24.  He stated that he told his physician about his pain while in service in 1981 but was never issued orthotics or special shoes to alleviate his pain.  J.A. 1124.  He attributed the lack of documentation of complaints related to pes planus in his service medical record to his involuntary separation in 1991, stating that he was not offered a separation physical, pre-separation counseling, or the opportunity to submit a disability claim before his 1991 discharge.  J.A. 1123, 1125–26.

In October 2016, Mr. Johnson submitted a second statement restating the strenuous activities he had performed during service. J.A. 613. In addition to the training and activities already described, he stated that he performed remedial physical therapy for weight gain, which exacerbated his foot condition. J.A. 613–14. He added that the atmosphere during his service encouraged service members to "[s]uck it [u]p," in other words, not complain of their ailments. J.A. 613.

In December 2016, Mr. Johnson submitted a third statement. J.A. 102–04. This statement largely reiterated the facts recited in the previous two statements. *Id.* Mr. Johnson added that he was not found to have flat feet when he was examined by a doctor during his military entrance processing, and that, had he had flat feet at that time, he would not have been permitted to join or rejoin the Marine Corps. J.A. 103.

The Board denied Mr. Johnson's service connection claim for pes planus. J.A. 18. It found that the evidence showed that Mr. Johnson's pes planus pre-existed his enlistment and did not increase in disability beyond its natural progression during his service. J.A. 18.

Mr. Johnson appealed to the Veterans Court, which affirmed. *Decision* at *5. It found clear and unmistakable evidence that Mr. Johnson's pes planus disability predated his enlistment in his 1981 admission of "flat feet all life." *Id.* at *3. The Veterans Court also found clear and unmistakable evidence that Mr. Johnson's pes planus disability was not aggravated beyond its natural progression during service. *Id.* at *3–4. The Veterans Court considered Mr. Johnson's lay statements and found that his description of rigorous activities during service "conflates risk factors with actual aggravation." *Id.* at *4.

Mr. Johnson timely appealed to this court.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court comes from 38 U.S.C. § 7292. Our jurisdiction under that section is limited. We have jurisdiction to review "all relevant questions of law," but lack jurisdiction to review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case," except to the extent that those challenges raise a constitutional issue. § 7292(d).

Mr. Johnson purports to challenge three issues of law in his appeal to this court. But his challenges, at heart, all pertain to factual issues or the application of law to fact. We therefore lack jurisdiction to address Mr. Johnson's arguments under § 7292(d).

First, Mr. Johnson argues that the Veterans Court erred by failing to determine that the VA violated its statutory duty to assist under 38 U.S.C. § 5103A by not providing him with an adequate medical examination and opinion necessary to decide his claim. Appellant's Br. 10, 14–20. He argues that the 2012 medical examination was inadequate because the medical examiner failed to consider his lay statements; the medical examination was rushed; and the resulting report flawed. *Id.* This argument does not raise issues falling within our limited jurisdiction under § 7292(d).

Under § 5103A(d), the VA is required to provide a medical examination in certain cases. But the adequacy of any such examination is an issue of fact, which we lack jurisdiction to review. *Prinkey v. Shinseki*, 735 F.3d 1375, 1382–83 (Fed. Cir. 2013) (finding that we lack jurisdiction to judge the sufficiency of a medical opinion and collecting non-precedential cases in which we have held the same).

Mr. Johnson's citations to Veterans Court cases remanding Board decisions based on flaws in the underlying medical examination, such as *Miller v. Wilkie*, 32 Vet. App.

249 (2020); and *Bowling v. Principi*, 15 Vet. App. 1 (2001), are unavailing. *See* Appellant's Br. 15, 18–19. The Veterans Court's jurisdiction, governed by 38 U.S.C. § 7252 and § 7261, is broader than our own, which is governed by 38 U.S.C. § 7292. That the Veterans Court has the power to remand to remedy inadequacies in a medical examination does not imply that we have that same power. *See Prinkey* 735 F.3d at 1383 (explaining that the Veterans Court acts "as the sole appellate judge of medical evidence (except where a constitutional issue is before this court)" and that if we were to review the sufficiency of a medical examination it would "turn the jurisdictional order set by Congress in 1988 on its head").

Second, Mr. Johnson argues that the Veterans Court misapplied relevant statutes—namely 38 U.S.C. § 7104(d)(1) and § 1154(b)—in such a way as to permit the Board to disregard his lay statements. Appellant's Br. 11, 14–20. This argument presents an issue of fact which we lack jurisdiction to review.

The Board considered lay evidence, but it did not give that lay evidence the weight that Mr. Johnson believes it should have. *See* J.A. 26 (discussing Mr. Johnson's July 2013 statement); *see also* J.A. 19 ("The Board has thoroughly reviewed all the evidence in the Veteran's claims file."). Similarly, the Veterans Court considered lay evidence but determined that Mr. Johnson's lay statements pertained to "risk factors for aggravation" rather than "actual aggravation." *Decision* at \*4. That is, the Board and Veterans Court did not disregard Mr. Johnson's lay statements as he alleges. Rather, the Board and Veterans Court gave Mr. Johnson's lay statements less probative value than Mr. Johnson believes they should have. The probative value given to evidence is a factual determination beyond our jurisdiction. *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

Mr. Johnson's citations to cases in which we have explained the role that lay evidence plays in disability benefit determinations are not to the contrary. For example, in *Jandreau v. Nicholson*, 492 F.3d 1372 (Fed. Cir. 2007), we addressed a legal issue—whether, as the Veterans Court held, "competent medical evidence is required" when "the determinative issue involves either medical etiology or a medical diagnosis." *Id.* at 1374, 1376–77. We held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." *Id.* at 1377 (footnote omitted). Here, unlike in *Jandreau*, the Board and Veterans Court permitted lay evidence and did not announce, as a matter of law, that lay evidence *could never* show service connection under these circumstances. The Veterans Court reviewed the lay evidence and determined that it showed that Mr. Johnson had experienced risk factors for further pes planus disability, but that it did not show actual aggravation. *Decision* at *4. The Veterans Court concluded that Mr. Johnson's lay evidence was outweighed by the uncontroverted medical evidence that Mr. Johnson's pes planus was not aggravated beyond its natural progression during service. *Id.* This determination is a factual determination that we lack jurisdiction to review. *See Jandreau*, 492 F.3d at 1377 ("Whether lay evidence is competent and sufficient in a particular case is a fact issue . . . rather than a legal issue . . . .").

Third, Mr. Johnson argues that the Veterans Court misapplied the presumption of soundness under 38 U.S.C. § 1111. Appellant's Br. 13, 20–23. Under the presumption of soundness in 38 U.S.C. § 1111, "every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination,

acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service." To rebut this presumption, the VA must show clear and unmistakable evidence of a preexisting condition and of a lack of aggravation during service. *Wagner v. Principi*, 370 F.3d 1089, 1095–96 (Fed. Cir. 2004). Mr. Johnson asserts that the evidence relied on by the Veterans Court to show a preexisting condition—the 1981 admission of "flat feet all life"—"says nothing about any morbidity arising therefrom prior to service, or any reason why Mr. Johnson was not entitled to a presumption of soundness upon entry into the Marine Corps." Appellant's Br. 21. Mr. Johnson further argues that, even if there were clear and unmistakable evidence showing preexisting pes planus, the Veterans Court further erred by finding clear and unmistakable evidence of no aggravation during service. *Id.* at 22. Mr. Johnson contends that the 2012 medical opinion does not provide clear and unmistakable evidence rebutting the presumption of aggravation. *Id.*

Once again, Mr. Johnson's arguments are purely factual in nature. He argues that the Board and the Veterans Court gave the 1981 record of "flat feet all life," J.A. 888, and the 2012 medical opinion, J.A. 1411–24, the wrong probative value. *See, e.g.*, Appellant's Br. 10–13, 21–23. The Veterans Court applied the correct standards here regarding evidence that Mr. Johnson was not sound at his entry to the Marine Corps—which it did through his 1981 admission of "flat feet all life"—and evidence that Mr. Johnson's pes planus condition was not aggravated during service—which it did through the 2012 medical examination report. *Decision* at *4–5. We lack jurisdiction to review the VA's underlying factual findings. *See* 38 U.S.C. § 7292(d).

CONCLUSION

We have considered Mr. Johnson's remaining arguments and conclude that we lack jurisdiction. For the reasons discussed above, we *dismiss* Mr. Johnson's appeal.

**DISMISSED**

COSTS

No costs.