Citation Nr: 1641963 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 09-16 478 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disability, to include schizophrenia.

2. Entitlement to service connection for sleep apnea, to include as secondary to an acquired psychiatric disability.

3. Entitlement to service connection for tension headaches, to include as a qualifying chronic disability under 38 C.F.R. § 3.317.

4. Entitlement to service connection for tinnitus, to include as secondary to an acquired psychiatric disability.

5. Entitlement to an evaluation in excess of 20 percent for degenerative disc disease and degenerative joint disease of the thoracolumbar spine.




REPRESENTATION

Appellant represented by: J. Michael Woods


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Scott Shoreman, Counsel


INTRODUCTION

The Veteran performed active military service from August 1979 to November 1982 and from July 1998 to March 1999. He also served with Reserve components at various times. He is a Persian Gulf War veteran from his latter period of active service.

This appeal arises to the Board of Veterans' Appeals (Board) from July 2007 and May 2015 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. 

In October 2012, the Veteran testified before the undersigned at a video-conference hearing on the issue of service connection for an acquired psychiatric disability. A transcript of this proceeding has been included in the claims folder. The Veteran indicated on his May 2016 substantive appeal for the other issues that he does not wish to testify at a hearing before the Board.

The issue of service connection for an acquired psychiatric disability was previously before the Board in February 2013 and September 2014 at which time the Board remanded, it for additional development. The requested development has been completed, and the claim is properly before the Board for appellate consideration.

The issue of an earlier effective date for the grant of service connection for degenerative disc disease and degenerative joint disease of the thoracolumbar spine has been raised by the record in a June 2014 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015). 

The issues of entitlement to service connection for tension headaches and tinnitus and to an increased evaluation for degenerative disc disease and degenerative joint disease of the thoracolumbar spine are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. Schizophrenia was aggravated by the service-connected degenerative disc disease and degenerative joint disease of the thoracolumbar spine.

2. Sleep apnea was caused by the service-connected acquired psychiatric disability, to include as schizoaffective disorder.


CONCLUSIONS OF LAW

1. The criteria for service connection for an acquired psychiatric disability, to include schizophrenia, to include as secondary to degenerative disc disease and degenerative joint disease of the thoracolumbar spine, have been met. 38 U.S.C.A. §§ 1110, 1131, 1154(a), 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2015).

2. The criteria for service connection for sleep apnea, to include as secondary to an acquired psychiatric disability, have been met. 38 U.S.C.A. §§ 1110, 1131, 1154(a), 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In this decision, the Board grants service connection for an acquired psychiatric disability and sleep apnea. As this represents a complete grant of the benefit sought on appeal for these issues, no discussion of VA's duty to notify and assist is necessary.

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

In addition to the elements of direct service connection and presumptive service connection, service connection may also be granted on a secondary basis for a disability if it is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a) (2015). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

A. Acquired Psychiatric Disability, to Include Schizophrenia

Private psychiatric treatment records from December 2002 show a diagnosis of psychotic disorder, NOS, and rule out schizoaffective disorder. It was noted that the Veteran exhibited delusions regarding his family, the National Guard, and the government. The Veteran was transferred to VA for inpatient treatment. In January 2003 he was diagnosed with adjustment disorder: mixed anxiety/depression. It was noted that the Veteran did not have a prior psychiatric hospitalization, and he described conflict with family members. The following day he was diagnosed with severe and persistent mental illness, including but not limited to schizophrenia, bipolar disorder, major affective disorder, major affective disorder, or posttraumatic stress disorder (PTSD). August 2003 VA treatment records indicate a diagnosis of schizoaffective disorder, depressed. 

In March 2013 the Veteran had a VA psychiatric examination at which he was diagnosed with psychotic disorder, NOS. The examiner noted that the Veteran was not able to provide a logical history without interjecting delusional content. The examiner felt that the Veteran's presentation was consistent with a psychotic condition such as schizophrenia and felt that the medical records did not suggest that he had been mentally ill for years at the time of the first psychiatric hospitalization in December 2002. It was less likely than not that the Veteran had PTSD from his military experiences or that he became psychotic as a result of receiving the Anthrax vaccine four years earlier.

A private psychologist, Dr. H-G, examined the Veteran in April 2014 and diagnosed him with schizoaffective disorder depressive type. The Veteran was socially isolated and withdrawn. He reported taking Zoloft and Risperidone but did not feel that they were the proper medications. The examiner noted that the Veteran's symptoms included depressed mood, anxiety, suspiciousness, panic attacks, disturbances in motivation and mood, difficulty adapting to stressful circumstances, inability to establish and maintain effective relationships, and intermittent inability to perform activities of daily living. Dr. H-G wrote that the Veteran's degenerative disc disease and degenerative joint disease of the thoracolumbar spine caused schizoaffective disorder. There was a body of literature detailing the connection between pain and psychiatric disorders. Dr. H-G also opined that it was more likely than not that degenerative disc disease and degenerative joint disease of the thoracolumbar spine were aggravating schizoaffective disorder.

The Veteran had another VA examination in February 2015, and the examiner noted that it was false to conclude that medical problems were always sufficient to result in a psychiatric condition. The examiner felt that there were situational factors, such as family discord, financial strain, abdominal pain, chronic back pain, a legal dispute, housing problems, and worry about his brother's medical diagnosis that cumulatively resulted in increased stress and ultimately in the expression of mental health symptoms. It was at least as likely as not that the Veteran's schizoaffective disorder was partly caused by his service-connected spine disorder. The examiner opined in March 2016 that in the absence of the other identified stressors, the service-connected spine disorder would have not have caused schizoaffective disorder. There was no medical evidence to support that a spine disorder is causally linked to the onset of schizoaffective disorder. The Veteran's schizoaffective disorder was the culmination of numerous stressful situational factors, which included chronic back pain.

Probative value is given to the February 2015 VA examiner's opinion and Dr. H-G's opinion because they contain a careful review and analysis of the Veteran's history and the result of the examinations. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (The Board "must be able to conclude that a medical expert has applied valid medical analysis to the significant facts of the particular case in order to reach the conclusion submitted in the medical opinion."); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). In regards to the VA examiner's March 2016 opinion, the Board notes that while the examiner opined that the service-connected disability would not have caused schizoaffective disorder on its own, back pain was still listed as one of the causes. Furthermore, Dr. H-G's opined that the back disability aggravated the Veteran's schizophrenia, and the VA examiner's opinions do not suggest otherwise. Regardless of causation, service connection can be granted on a secondary basis based on aggravation. See 38 C.F.R. § 3.310(b). Applying the benefit of the doubt doctrine, all doubt is resolved in favor of the Veteran. See 38 C.F.R. § 3.102. Therefore, the Veteran's claim for service connection for an acquired psychiatric disability, to include schizophrenia, to include as secondary to degenerative disc disease and degenerative joint disease of the thoracolumbar spine, is granted.

A. Sleep Apnea

The Veteran is seeking service connection for sleep apnea, to include as secondary to an acquired psychiatric disability. August 2011 private treatment records show a diagnosis of sleep apnea and state that the Veteran was not on a CPAP machine due to financial reasons. VA treatment records also indicate a history of sleep apnea. A private physician reviewed the record and interviewed the Veteran in March 2016. He opined that schizoaffective disorder, depressed type, more likely than not caused and permanently aggravated obstructive sleep apnea, which was physically and emotionally debilitating. A body of literature supports a comorbid relationship between mental health impairments and the development of obstructive sleep apnea, and comorbidity between obstructive sleep apnea and psychiatric medications. The physician submitted medical literature stating that people with mental illness have a higher risk of sleep apnea. Applying the benefit of the doubt doctrine, all doubt is resolved in favor of the Veteran. See 38 C.F.R. § 3.102. Probative value is given to the March 2016 medical opinion. See Nieves-Rodriguez, 22 Vet. App. at 304; Stefl, 21 Vet. App. at 124. The claim of service connection for sleep apnea, to include as secondary to an acquired psychiatric disability, is granted. 


ORDER

Service connection for an acquired psychiatric disability, to include schizophrenia, to include as secondary to degenerative disc disease and degenerative joint disease of the thoracolumbar spine, is granted.

Service connection for sleep apnea, to include as secondary to an acquired psychiatric disability, is granted.


REMAND

The Veteran is seeking an evaluation in excess of 20 percent for his service-connected degenerative disc disease and degenerative joint disease of the thoracolumbar spine. The Veteran underwent an examination arranged through VA QTC Services in April 2015. Once VA undertakes the effort to provide an examination, it must obtain a fully adequate one. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). On examination, range of motion was forward flexion to 40 degrees with pain beginning at 40 degrees, extension to 5 degrees with pain at 5 degrees, left and right lateral flexion to 10 degrees with pain at 10 degrees, and left and right lateral rotation to 20 degrees with pain at 20 degrees. The examiner indicated that the Veteran was able to perform repetitive-use testing with three repetitions, and the recorded range of motion for each individual motion was the same on repetitive testing. However, the examiner also checked that there was additional limitation of range of motion of the thoracolumbar spine following repetitive use testing. Therefore, the Veteran must be scheduled for a new examination to resolve this inconsistency before the claim can be decided on the merits.

In regards to the claim for service connection for tinnitus, at November 2004 VA treatment it was noted that the Veteran did not have tinnitus. VA treatment records show that in February 2008 the Veteran complained of occasional ringing in his ears. At a July 2012 Persian Gulf registry consultation, the Veteran reported that he had tinnitus. In September 2016 the Veteran's representative submitted medical literature stating that depressive symptoms may substantially aggravate tinnitus. Since the record shows that the Veteran has been diagnosed with tinnitus and there is medical literature of record stating that depressive symptoms may substantially aggravate tinnitus, the Board finds that the evidence of record triggers the necessity of an examination in order to decide the claim on the merits. See 38 C.F.R. § 3.159(c) (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The Veteran is also seeking service connection for tension headaches. He said at June 2008 VA treatment that at times he had bad headaches. At the July 2012 Persian Gulf Registry examination, the Veteran reported a history of headaches post head trauma. The Veteran served in Kuwait from September 1998 to February 1999. Although he has not asserted service connection based on his service in the Persian Gulf, courts have held that because proceedings before VA are nonadversarial, VA's obligation to analyze claims goes beyond the arguments explicitly made. See Robinson v. Peake, 21 Vet. App. 545, 553 (2008), aff'd sub nom. Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009); see also Schroeder v. West, 212 F.3d 1265, 1271 (Fed. Cir. 2000) (Upon the filing of a claim for benefits, VA generally must investigate the reasonably apparent and potential causes of the Veteran's condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filing.). 
In this regard, the Board notes that under that section, service connection may be warranted for a Persian Gulf Veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2021. 38 C.F.R. § 3.317(a)(1) (2016); 81 Fed. Reg. 71382-01 (Oct. 17, 2016). To date, the Veteran's claims have not been considered under the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317. In light of the foregoing, the Board finds that the RO must provide the Veteran with appropriate notice of the evidence needed establish service connection under the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317.

VA treatment records to May 2016 have been associated with the claims file. The RO should attempt to obtain all relevant VA treatment records dated from 
May 2016 to the present, while the claim is in remand status. Bell v. Derwinski, 2 Vet. App. 611 (1992).
 
Accordingly, the case is REMANDED for the following action:

1. The RO should provide the Veteran appropriate notice pursuant to the Veterans Claims Administration Act (VCAA) under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), that includes the criteria required for the claims asserted based on Persian Gulf War service under 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317.

2. Obtain VA treatment records from May 2016 to the present.

3. After the above development has been completed to the extent possible, schedule the Veteran for a VA examination to determine the current severity of his degenerative disc disease and degenerative joint disease of the thoracolumbar spine. The examiner should review the claims folder in conjunction with the examination. All indicated tests should be performed and the results reported. The examiner should describe any additional functional loss pertaining to the service-connected thoracolumbar disability due to pain or weakness, and should document all objective evidence of those symptoms. If the additional functional loss due to pain or weakness cannot be expressed without resorting to speculation, the examiner should explain why that is so. 

4. Schedule the Veteran for a VA examination to determine the current nature, onset and likely etiology of tinnitus. The claims file must be made available to the examiner for review prior to the examination. All necessary tests should be conducted and the examiner should review the results of any testing prior to completion of the report.

The examiner should opine as to whether it is at least as likely as not that the Veteran's tinnitus is related to service or had its onset within one year of discharge from active duty. 

The examiner should provide an opinion as to whether it is at least as likely as not that the Veteran's tinnitus was caused or aggravated by his service-connected acquired psychiatric disability, to include schizophrenia, independent of other possible risk factors that may have caused or aggravated the tinnitus. Aggravation is defined for these purposes as a worsening of the underlying condition versus a temporary flare-up of symptoms. 

The examiner should provide a detailed rationale for any opinion expressed that includes discussion of the medical literature regarding the connection between depressive symptoms and tinnitus submitted by the Veteran's representative in September 2016. If an opinion cannot be rendered without resorting to speculation, the examiner should state why that is so, to include a recitation of any missing facts necessary to render a non-speculative opinion.

5. Then readjudicate the appeal. If the benefits sought on appeal are not granted in full, the RO should issue the Veteran and his representative a supplemental statement of the case and provide an opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
L. M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs